*Decision will be entered under Rule 155.*

Reviewed by the Court.

CHESTER MATHESON AND MARJORIE E. MATHESON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4427–78.     Filed July 24, 1980.

*David I. Kaufman* and *George E. Ward,* for the petitioners.
*Joseph C. Hollywood,* for the respondent.

---

## OPINION

TIETJENS, *Judge:* Respondent determined a deficiency of $10,514 in petitioners' Federal income tax for 1976.[1] The sole issue for our determination is whether petitioners may revoke their election under section 165(h).[2]

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

Petitioners, cash basis taxpayers, timely filed joint Federal income tax returns for 1975 and 1976. At the time they filed their petition, petitioners resided at Palm Desert, Calif.

Petitioners suffered a disaster loss in September 1976. On October 28, 1976, they filed an amended Federal income tax return for 1975 electing under section 165(h) to treat the disaster loss as if it had occurred in 1975 and, thereby, claiming itemized deductions of $29,558 attributable to that loss.

Ninety-five days later, on January 31, 1977, petitioners filed a second amended Federal income tax return for 1975 in which they attempted to revoke the election they had made pursuant to section 165(h). The return was accompanied by a check payable to the Internal Revenue Service in the amount of $6,286, representing the refund of $5,986 received from the first amended return plus $300 in estimated interest payments.

Petitioners claimed a disaster loss of $29,558 in their 1976 joint Federal income tax return.

At all material times during 1975 through 1977, petitioners resided at Palm Desert, Calif., and employed Gerald B. Queen, a certified public accountant and a partner in a Taylor, Mich., accounting firm, to advise them about tax matters and to prepare for them all returns and amended returns for 1975 and 1976. Petitioners relied on their accountant's advice in most material respects. After consulting with Internal Revenue Service personnel on location at the disaster site and upon advice and concurrence of Mr. Queen, petitioners decided to treat the disaster as if it had occurred in 1975 and later decided to revoke

---

[1]Subsequent to Feb. 28, 1978, when respondent issued to petitioners a statutory notice of deficiency for 1976, on Mar. 13, 1978, petitioners timely filed a claim for a refund for 1975 in the amount of $5,986 based upon respondent's disallowance of a disaster loss for 1976.

[2]All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise stated.

their election. Mr. Queen prepared petitioners' second amended 1975 Federal income tax return after petitioners submitted facts to him on January 19, 1977.

Petitioners assert that since their attempted revocation was made 2½ months before the deadline for the original election, they should be allowed to revoke their section 165(h) election. In making this argument, petitioners urge us to find that the part of section 1.165–11(e), Income Tax Regs., which limits revocations of elections under section 165(h) to 90 days after a taxpayer's election, is unreasonable and unrelated to any valid Government interest. They cite Delegation Order No. 127 (Rev. 1),[3] 1973–2 C.B. 463, to show that respondent recognized that extensions of the period for revocation, even after the election became irrevocable under the terms of the regulation, were not inimical to any Government interest. Alternatively, petitioners contend that the regulation is subject to an implied exception that postpones the commencement of the time limit for revocations where the taxpayer has made an early election. For this contention, petitioners chiefly rely on National Lead Co. v. Commissioner, 336 F.2d 134 (2d Cir. 1964), revg. 40 T.C. 282 (1963), cert. denied 380 U.S. 908 (1965).

Respondent, by contrast, argues that the record does not justify allowing petitioners to revoke the election they knowingly made, that the attempted revocation of the section 165(h) election is barred by section 1.165–11(e), Income Tax Regs., that the doctrine of substantial compliance with the regulation is not applicable to the case at bar since the time requirement for revocations goes to the essence of the statute, and is, therefore, mandatory,[4] and that even if we find the regulation invalid, petitioners' original election is irrevocable for all the reasons for irrevocability cited in Taylor v. Commissioner, 67 T.C. 1071, 1079–1080 (1977). In his reply brief, respondent further contends that a deadline for revoking a previous section 165(h) election

---

[3]This order was issued on Sept. 4, 1973, and revoked on May 25, 1975. Delegation Order No. 127 (Rev. 1), 1975–1 C.B. 640.

[4]See Sperapani v. Commissioner, 42 T.C. 308 (1964); Penn-Dixie Steel Corp. v. Commissioner, 69 T.C. 837 (1978). Substantial compliance with a regulation, however, has been found where the regulation's requirements do not go to the essence of the statute. See Hewlett-Packard Co. v. Commissioner, 67 T.C. 736 (1977); Columbia Iron & Metal Co. v. Commissioner, 61 T.C. 5 (1973).

that is earlier than the deadline for making a section 165(h) election for the disaster loss year is reasonable and that the unqualified 90-day right to revoke a section 165(h) election is reasonable and protects the Government's interests.

Section 165(h) provides for an election to deduct certain disaster losses in the taxable year immediately preceding the one in which the disaster occurred.[5] According to S. Rept. 92–1082 (1972), 1972–2 C.B. 713, 714–715, the purpose of section 165(h) is to allow taxpayers suffering these losses to receive an immediate tax benefit to help restore their lost homes or businesses. By so doing, section 165(h) aims to prevent any hardship for the taxpayer who otherwise would have been required to wait for relief until he filed his return for the year in which the disaster actually occurred.

Section 1.165–11(e), Income Tax Regs., prescribes the time and manner for making an election under section 165(h):

An election to claim a deduction with respect to a disaster loss * * * must be made by filing a return, an amended return, or a claim for refund clearly showing that the election provided by section 165(h) has been made. * * * An election in respect of a loss arising from a particular disaster occurring after December 31, 1971, must be made on or before the later of (1) the due date for filing the income tax return (determined without regard to any extension of time granted the taxpayer for filing such return) for the taxable year in which the disaster actually occurred, or (2) the due date of filing the income tax return (determined with regard to any extension of time granted the taxpayer for filing such return) for the taxable year immediately preceding the taxable year in which the disaster actually occurred. Such election shall be irrevocable after the later of (1) 90 days after the date on which the election was made, or (2) March 6, 1973. * * * [Sec. 1.165–11(e), Income Tax Regs.]

Petitioners ask us to invalidate that part of section 1.165–11(e), Income Tax Regs., which limits to 90 days the time for revoking an election under section 165(h). Both parties have acted and argued their positions as though they do not challenge

---

[5]Sec. 165(h) provides:

Notwithstanding the provisions of subsection (a), any loss attributable to a disaster occurring in an area subsequently determined by the President of the United States to warrant assistance by the Federal Government under the Disaster Relief Act of 1974 may, at the election of the taxpayer, be deducted for the taxable year immediately preceding the taxable year in which the disaster occurred. Such deduction shall not be in excess of so much of the loss as would have been deductible in the taxable year in which the casualty occurred, based on facts existing at the date the taxpayer claims the loss. If an election is made under this subsection, the casualty resulting in the loss will be deemed to have occurred in the taxable year for which the deduction is claimed.

the validity of the time restrictions the regulation places on making an election under this section. We will, therefore, narrow our examination to the validity of the time limitations placed on the revocation of an election; however, we feel that we cannot determine the validity of this part of the regulation without reference to the time limits for making an election.[6]

The part of the regulation at issue is interpretive and promulgated pursuant to the respondent's general rule-making authority under section 7805(a).[7] As such, it must be sustained unless unreasonable and plainly inconsistent with the revenue statutue. *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948).

Considering the time limits at issue in light of the purpose of section 165(h), we conclude that the time limits for revoking an election under the regulation are unreasonable and contrary to the intent of the statute. The purpose of section 165(h) is to allow a taxpayer to receive an immediate tax benefit so that he need not wait for the benefit until the due date for filing his return for that year. Yet, under the regulation, the taxpayer may elect to treat the loss as having occurred in the immediately preceding year until the time for filing his return for that year. If, for example, a calendar year taxpayer incurs a loss, described in the statute, on January 1, 1979, he may elect on April 15, 1980, to treat the loss as having occurred in 1978. Without the enactment of section 165(h), however, he could have received a tax benefit by filing his 1979 tax return on April 15, 1980, claiming a deduction for the disaster loss in the year the loss actually occurred.

Yet, the effect of the regulation's limitations on revoking an election may well be to make taxpayers, like petitioners, reluctant to make an election soon after their loss since, if they were to wait until the time for filing their return for that year, they could compare the relative tax benefits of ascribing the loss

---

[6] In so doing, we do not comment on whether the time restrictions the regulation places on making an election under sec. 165(h) are valid.

[7] An interpretive regulation may be contrasted to a legislative regulation, one which is mandated specifically in the statute and has the force and effect of law. *Union Electric Co. of Missouri v. United States*, 158 Ct. Cl. 479, 305 F.2d 850 (1962); *Regal, Inc. v. Commissioner*, 53 T.C. 261 (1969), affd. per curiam 435 F.2d 922 (2d Cir. 1970); *Robbins Door & Sash Co. v. Commissioner*, 55 T.C. 313 (1970).

to the immediately preceding tax year or to the tax year in which the loss actually occurred. In this way, the regulation tends to thwart the tax benefit intended by the enactment of the statute.[8]

Essentially, after examining the statute and its legislative history, we find it unreasonable for the regulation to impose greater restrictions on the time for revoking an election under section 165(h) than on the time for making an election under this section. Therefore, that part of the regulation which imposes a time limit for a taxpayer's revocation of an election under section 165(h) which is shorter than the time for making an election under that section is declared invalid.[9]

*Decision will be entered for the petitioners.*

Reviewed by the Court.

CHABOT, *J.*, concurring: I join in the majority opinion, but believe it may be useful to add the following remarks.

When the Congress legislates, it is free to act, within the limits of the Constitution, as broadly or as narrowly as its collective wisdom and sense of the body politic move it to act. Legislative history affords a guide to the meaning of what the Congress has done. However, the Congress is free to enact legislation in language that extends beyond the confines of the problem described in the legislative history.

Although section 165(h) clearly was intended to permit taxpayers to secure the tax benefits of disaster loss deductions sooner than they normally would, the language that was enacted is not so limited. The statutory language imposes no requirement

---

[8]It is clear that respondent is aware of this effect of the regulation. In his reply brief, he states:

"In reply, the respondent agrees with petitioners that they *could have* waited until the due date of their 1976 return to make their section 165(h) election. A delay in making the election would have allowed petitioners to fully appraise themselves and their advisor of the facts prior to making their election. In retrospect, this would have been a wise course of action. However, this did not occur."

[9]While we hold invalid any time restriction for revoking an election which is shorter than the time for making an election under sec. 165(h), we do not otherwise comment on what the time limit should be.

that the rules of this subsection are to apply only if they would result in an earlier tax benefit. The statutory language merely provides that the taxpayer has a choice, without stating or necessarily implying when or why the choice is to be made.

The regulation here in dispute (sec. 1.165–11(e), Income Tax Regs.) acknowledges that a disaster loss election may be made by filing a claim for refund. Under the general rules of section 6511, the time for filing a claim for refund for 1975 income tax did not expire before April 15, 1979, and for 1976, not before April 15, 1980.

Section 165(h) does not provide any special authorization of regulations power to the Secretary of the Treasury. Nevertheless, the Secretary has general regulatory authority and has responsibility (within the confines of the Constitution, the statute, and his budget) to provide for proper administration and avoidance of abuses. Also, it is appropriate for the Secretary to explore the meaning of the statutory language and issue regulations expounding his understanding of this meaning. (See, e.g., *Associated Hospital Services, Inc. v. Commissioner*, 74 T.C. 213 (1980), on appeal (5th Cir., June 4, 1980).)

Regulations under section 165(h) may appropriately be designed to protect against potential "whipsaw" abuses that might arise from the differing expiration dates of the statutes of limitations with respect to the year in which the disaster occurred and the immediately preceding year. Further, it might well be appropriate for regulations to minimize the complexity of the interaction between section 165(h) and the net operating loss provisions. Moreover, regulations might appropriately guard against other abuses that can fairly be conceived of.

However, respondent's regulatory authority should not be allowed to cut back the benefits authorized by the statutory language, including the language of section 6511, in the absence of appropriate justification. The Secretary's general authority to write regulations does not carry with it the same presumption of validity as the Congress' constitutional authority to write legislation. Although the courts have stated that legislation generally will be upheld if the courts can conceive of any circumstance justifying the legislation (e.g., *Bryant v. Commissioner*, 72 T.C. 757, 764 (1979), and cases cited therein), surely we should demand something more from respondent when he seeks

to justify regulations which appear to cut back on the benefits apparently conferred by the words of the statute.

The legislative history of section 165(h) suggests no justification, by way of protection against abuse or against undue complexity in administration, for the severe regulatory restriction on revocations in dispute in the instant case. The record in the instant case suggests no such justification. The dissenting opinion suggests a concern about net operating loss carryback complexities. However, the instant case does not appear to present such a complexity and, in fact, respondent has not in the instant case sought to justify the regulation by reference to such a complexity.

The majority opinion invalidates only so much of the regulation as imposes a time limit for revocation which is shorter than the time limit for making the section 165(h) election. In response to a concern that this holding "can only lead to administrative chaos," it may be helpful to look at the last sentence of the regulation here in dispute. This sentence provides that, in the case of a section 165(h) election with regard to losses arising from disasters occurring after December 31, 1961, and before January 1, 1972, "Such election shall be irrevocable after the date by which it must be made," i.e., that the period for revocation does not expire before the period for election expires. The original section 165(h) regulations provided the same rule, albeit in somewhat different words. Since that is essentially what the majority do with respect to the revocation in the instant case, and since no "administrative chaos" has been reported as a result of respondent's own regulation with respect to pre–1972 disasters, I do not understand why the holding of the majority, herein, which permits petitioners to come under the regular deduction rules, will inevitably lead to "administrative chaos."

STERRETT, *J.*, agrees with this concurring opinion.

NIMS, *J.*, dissenting: Whether or not the regulation in question is "interpretive" or "legislative," it was certainly within the Commissioner's authority to promulgate and, unless the regulation is unreasonable or plainly inconsistent with section 165(h), it should not be overruled except for weighty reasons. Sec. 7805(a);

*Bingler v. Johnson,* 394 U.S. 741 (1969); *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496 (1948). While this Court has it within its power to hold a regulation invalid, we should be chary of exercising that power in such a way as to unduly interfere with the administrative process. It is one thing to invalidate a regulation which is inconsistent with the statute, but here it seems to me we are essentially questioning the Commissioner's exercise of judgment on a matter well within his prerogative to determine.

Section 1.165–11(e) of the regulations was promulgated in response to an amendment of section 165(h) by section 2(a) of Pub. L. 92–418, effective as to disasters occurring after December 31, 1971. Section 165(h), as amended, gives affected taxpayers an election substantially more liberal than that previously provided. And, as indicated in the majority opinion, the regulation provides the aforementioned taxpayers with an extended period within which to make the election. The time prescribed in the regulation was undoubtedly within the Commissioner's authority to prescribe under section 6071(a), which provides that "When not otherwise provided for * * * the Secretary shall by regulations prescribe the time for filing any return, statement, or other document required by [the Code] or by regulations."

Delegation Order No. 127 (Rev. 1), 1973–2 C.B. 463, which was issued on September 4, 1973, and revoked on May 25, 1975 (when its purpose had been served), and by which petitioner attempts to justify his relaxed attitude toward the 90-day revocation deadline, was, in fact, a further liberalization, albeit temporary. The need for the delegation order was obvious: Since amended section 165(h) has been made effective for years beginning after December 31, 1971, and since the present regulation did not become final until March 6, 1973, taxpayers who had made an election regarding January 1, 1972—March 6, 1973, disaster losses, but without benefit of regulations, justifiably needed, in many cases, additional time within which to reconsider their positions, and Delegation Order 127 made that possible. In no way should such action be read to justify petitioner's theory that extensions of the period for revocation, even after the election becomes irrevocable under the terms of the regulation, are not inimical to any Government interest.

The regulation in its present form puts no particular pressure on the taxpayer to make the election—as the majority observes,

he may wait as late as the due date of the disaster-year return to do so, or possibly even later. The majority, however, would permit the taxpayer to immediately make the election, obtain his refund, and then change his mind at his leisure. Such a procedure, if imposed by us upon the Government, can only lead to administrative chaos.

For example, it might logically be envisioned that in many cases involving business disaster losses, an election to claim the loss in the preceding year will result in a net operating loss for such year, which, in turn, may result in refunds for yet earlier years. If such refunds are all in due course processed by the Internal Revenue Service, and much later, the taxpayer revokes his election under the majority's open-ended extension of time, the resulting confusion will be monumental. And it must be remembered that disaster losses by definition involve not one, but hundreds or even thousands of similarly situated taxpayers.

Therefore, if the taxpayer is going to revoke his election, the Commissioner is entitled to know about it promptly. The opportunity to obtain quick cash in the wake of a disaster is a humane response to a taxpayer's plight provided by Congress, but the tollgate through which the taxpayers must pass is that the election must be irrevocable except as modified by the 90-day change-of-mind provision. It is incorrect, therefore, for us to call the 90-day limitation unreasonable.

Furthermore, by our striking the 90-day provision, taxpayers generally are left uncertain as to when their election becomes irrevocable. Under the doctrine of election as enunciated in prior decisions of this Court, once there has been a clear exercise of the election, it becomes binding on the taxpayer. *Thorrez v. Commissioner*, 31 T.C. 655, 668 (1958); *Alabama Pipe Co. v. Commissioner*, 23 T.C. 95, 98 (1954). This puts the taxpayer in a worse position than before.

For the foregoing reasons, I would hold for respondent.

FEATHERSTON, DAWSON, TANNENWALD, SIMPSON, WILBUR, and PARKER, *JJ.*, agree with this dissenting opinion.