1118

## BBS Associates, Inc., Petitioner v. Commissioner of Internal Revenue, Respondent

Docket No. 6843–77R.    Filed August 26, 1980.

*William H. Powderly III, John F. LeBlond, John K. Barry,* and *Hollis T. Hurd,* for the petitioner.
*Marc. A. Feller,* for the respondent.

### OPINION

Goffe, *Judge:* Petitioner has instituted this action pursuant to section 7476(a)(2)(A), I.R.C. 1954,[1] for a declaratory judgment

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, except for the recurring reference to sec. 8.01 of the BBS Associates, Inc., Profit Sharing Plan & Trust. Sec. 7476(a) provides as follows:

(a) Creation of Remedy.—In case of actual controversy involving—

(1) a determination by the Secretary with respect to the initial qualification or continuing qualification of a retirement plan under subchapter D of chapter 1, or

that the BBS Associates, Inc., Profit Sharing Plan & Trust (hereinafter the plan) is a qualified plan under section 401(a). The issue presented is whether section 8.01 of the plan as amended satisfies the requirements of subparagraphs (A) and (E) of section 401(a)(11).

The parties filed with the Court the administrative record and a stipulation as to its genuineness pursuant to Rule 217(b), Tax Court Rules of Practice and Procedure, a supplemental stipulation of facts, and a second supplemental stipulation of facts. The case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulations of fact are incorporated herein by this reference.

BBS Associates, Inc. (hereinafter petitioner), is a corporation organized under the laws of Pennsylvania. Petitioner's principal office was located at Sewickley, Pa., when its petition was filed in this case.

On August 1, 1975, the board of directors of petitioner adopted the plan. On September 16, 1975, petitioner filed its Application for Determination for Defined Contribution Plan (Form 5301) with the District Director of Internal Revenue at Pittsburgh, Pa., requesting a determination that the plan met the requirements of section 401(a). By letter dated February 11, 1976, respondent requested additional information, and petitioner supplied that information, resubmitting the plan on February 16, 1976. Amendments to the plan were submitted to respondent on March 25, April 21, and September 9, 1976. By letter dated October 1, 1976, respondent mailed to petitioner a proposed determination that the plan failed to qualify under section 401(a) because section 8.01 of the plan did not meet the requirements of section 401(a)(11) as illustrated by section 11.401(a)–11, Temp. Treas. Regs., which had been issued on September 29, 1975. Petitioner appealed the proposed adverse

(2) a failure by the Secretary to make a determination with respect to—
    (A) such initial qualification, or
    (B) such continuing qualification if the controversy arises from a plan amendment or plan termination,
upon the filing of an appropriate pleading, the Tax Court may make a declaration with respect to such initial qualification or continuing qualification. any such declaration shall have the force and effect of a decision of the Tax Court and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification includes any revocation of or other change in a qualification.

determination, first to the Regional Office of the Employee Plans Division of the Internal Revenue Service, which appeal was denied, and then on November 18, 1976, to the National Office of the Employee Plans Division of the Internal Revenue Service. With petitioner's appeal to the National Office still pending and no notice of determination having been issued by the Commissioner, petitioner filed this action on July 1, 1977.

Under the circumstances of this case, petitioner bears the burden of proof—

as to the jurisdictional requirements described in Rule 210(c) [Tax Court Rules of Practice and Procedure] and also with respect to the date on which the request for determination, if any, was mailed to the Internal Revenue Service and the office to which it was mailed, and that no notice of determination has been issued by the Commissioner * * *

Rule 217(c)(1)(i)(A), Tax Court Rules of Practice and Procedure. The jurisdictional requirements herein are set forth in section 7476. Although the parties do not raise any jurisdictional issue and agree that the 270-day period specified by section 7476(b)(3) elapsed,[2] mere expiration of that 270-day period does not ensure that one's administrative remedies have been exhausted. *Prince Corp. v. Commissioner*, 67 T.C. 318 (1976). Therefore, even though there is no issue as to other jurisdictional requirements in this case, we must decide whether petitioner exhausted its administrative remedies as required by section 7476(b)(3) and Rule 210(c)(4), Tax Court Rules of Practice and Procedure. The proper inquiry is "whether, on all of the facts and circumstances presented, petitioner may be deemed to have exhausted its administrative remedies due to respondent's purported failure to process its request expeditiously." *Prince Corp. v. Commissioner*, *supra* at 327. When making that inquiry, the following standard applied: "After 270 days have passed a petitioner need only demonstrate that progress is severely hampered due to causes beyond its control." *Prince Corp. v. Commissioner*, *supra* at 328.

---

[2]Sec. 7476(b)(3) provides as follows:

(3) *Exhaustion of administrative remedies.*—The Tax Court shall not issue a declaratory judgment or decree under this section in any proceeding unless it determines that the petitioner has exhausted administrative remedies available to him within the Internal Revenue Service. A petitioner shall not be deemed to have exhausted his administrative remedies with respect to a failure by the Secretary to make a determination with respect to initial qualification or continuing qualification of a retirement plan before the expiration of 270 days after the request for such determination was made.

Unlike the situation in the *Prince* case, petitioner here has convinced us that it exhausted its administrative remedies. Petitioner diligently pressed its application for 21 months before filing this action. Nine of those months elapsed after the date on which respondent sent his proposed adverse determination letter. Considering the inordinately long delay by respondent in processing petitioner's application and arriving at a final determination and based upon the administrative record as a whole, we conclude that petitioner exhausted its administrative remedies prior to filing its petition herein. See *B.H.W. Anesthesia Foundation, Inc. v. Commissioner*, 72 T.C. 681, 682 n. 2 (1979).

Petitioner has carried its burden of proof with respect to jurisdiction. Petitioner also has carried its burden of proof with respect to the date on which the request for determination was mailed, the Office of the Internal Revenue Service to which it was mailed, and the fact that no notice of determination was issued by the Commissioner. Petitioner having proved the elements described in Rule 217(c)(1)(i)(A), Tax Court Rules of Practice and Procedure, respondent bears the burden of proof "as to every ground upon which he [or any party joining or intervening on his side] relies to sustain his position that such plan does not qualify."[3] Rule 217(c)(1)(ii), Tax Court Rules of Practice and Procedure.

Among petitioner's arguments in the instant case is one which asks us to hold that respondent has failed to carry his burden of proof. We reject that contention because it is based on the incorrect assumption that the burden of proof affects the weight to be accorded a party's legal arguments. Petitioner's assumption is derived from its interpretation of Rule 217(c)(1)(i)(A), Tax Court Rules of Practice and Procedure. Petitioner's interpretation of that Rule likewise is incorrect.

Rule 217(c), Tax Court Rules of Practice and Procedure, covers the burden of proof in declaratory judgment actions. In the context of a declaratory judgment action, burden of proof ordinarily plays a limited role. Declaratory judgment proceedings in this Court are customarily conducted on the basis of a

---

[3]Whether petitioner or respondent bears the burden of proof, the scope of our inquiry is limited to the propriety of the reasons why respondent would deny that the plan is a qualified plan.

stipulated administrative record. The facts contained in that record are presumed to be true for purposes of the declaratory judgment proceeding. Thus, as in all fully stipulated cases, few factual issues arise. For example, in the instant case, the parties are in full agreement upon the salient facts and dispute only the applicable law. Petitioner mistakenly concludes that Rule 217(c), Tax Court Rules of Practice and Procedure, is meaningless unless burden of proof in the context of a declaratory judgment action refers to a burden of persuading the Court about the correctness of one's legal arguments.

Contrary to petitioner's position, burden of proof is applicable in declaratory judgment proceedings but not as petitioner contends. A hypothetical case is illustrative. In a case involving the qualification of an organization as an exempt organization pursuant to section 501(c)(3), assume that respondent has determined as one ground for denying the organization exempt status that net earnings of the organization inure to the benefit of a private shareholder or individual. In a declaratory judgment action before this Court, the party who bears the burden of proof on that issue must rely entirely upon the facts as they are developed in the administrative record for proof that no net earnings inure to the benefit of a private shareholder or individual. If the Court finds that it cannot be determined from the administrative record whether or not net earnings inure to the benefit of such persons, the party bearing the burden of proof will not prevail on that issue.

The result in the foregoing hypothetical case parallels that which would obtain in a fully stipulated case in deficiency proceedings under Rule 122, which was the intent of this Court in adopting Rule 217(c). Burden of proof has its place in declaratory judgment actions just as it does in fully stipulated cases, although its role in the instant case is negligible. Here, respondent has proved the text of section 8.01 of the plan. That is sufficient to present us with the legal issue in this case. See *Dumaine Farms v. Commissioner*, 73 T.C. 650, 660 (1980).

Respondent contends that the plan does not qualify because its section 8.01 violates the requirements of section 401(a)(11); petitioner disagrees.

Section 8.01 of the plan provides in pertinent part as follows:

8.01 *Methods, Medium, Facility and Time of Payment*
(a) *Normal Form of Distribution*

Unless the Participant directs the Committee otherwise in writing prior to the event causing distribution, the normal form of distribution shall be a lump sum payment.

(b) *Retirement Benefits—Other Than Normal Form of Distribution*

(1) the distribution of a Participant's Company Contribution Account shall be in one or more of the following methods as the Participant may elect with the consent of the Committee:

(A) purchase of an annuity in one of the following forms:

(i) unless a Participant has no spouse or rejects this form of annuity in writing, the normal form of annuity shall be a qualified joint and survivor annuity. A qualified joint and survivor annuity is an annuity for the life of the Participant with a survivor annuity for the life of the surviving spouse. The survivor annuity shall be one-half (½) of the annuity payable during the joint lives of the Participant and his spouse. The joint and survivor annuity shall be the actuarial equivalent of a single annuity for the life of the Participant; or

(ii) an immediate or deferred life annuity;

(iii) a term certain and life annuity.

That is, the normal form of benefit distribution[4] is a lump-sum payment, but a participant may elect an annuity instead. When the annuity option is selected, it automatically takes the form of a qualified joint and survivor annuity unless the participant specifically rejects that form of annuity and affirmatively chooses another.

Section 401(a)(11)(A) (hereinafter subparagraph (A)) provides as follows:

(A) A trust shall not constitute a qualified trust under this section if the plan of which such trust is a part provides for the payment of benefits in the form of an annuity unless such plan provides for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity.

Respondent interprets this provision as meaning that if an annuity is offered as a method of benefit distribution under a plan, then the normal form of benefit distribution must be a qualified joint and survivor annuity. On the other hand, petitioner interprets subparagraph (A) as containing no require-ment that a qualified joint and survivor annuity be the normal form of benefit distribution under a plan which offers an annuity, but only as ensuring that if an annuity is offered by the plan that it have the effect of a qualified joint and survivor

---

[4]For purposes of this opinion, we have adopted the language used by petitioner in the plan. Therefore, the method of benefit distribution which is automatically provided by a plan in the absence of any action on the part of a participant will be referred to as the normal form of benefit distribution.

annuity. In this case, section 8.01 offers an annuity as an optional form of benefit distribution; such annuity, if chosen, takes the form of a qualified joint and survivor annuity unless the participant elects otherwise; and the normal form of benefit distribution under the plan is a lump-sum distribution. Therefore, respondent concludes that the plan does not qualify under section 401(a), and petitioner concludes that the plan does qualify under that section. The conclusions of the parties are consistent with their respective interpretations of the statute; it remains for us to decide which interpretation is correct.

Respondent premises his interpretation of subparagraph (A) on the belief that its meaning is discernible only in light of the requirement imposed by section 401(a)(11)(E) (hereinafter subparagraph (E)), which provides as follows:

> (E) A plan shall not be treated as satisfying the requirements of this paragraph unless, under the plan, each participant has a reasonable period (as prescribed by the Secretary by regulations) before the annuity starting date during which he may elect in writing (after having received a written explanation of the terms and conditions of the joint and survivor annuity and the effect of an election under this subparagraph) not to take such joint and survivor annuity.

By requiring plans that offer annuities to offer joint and survivor annuities and by requiring such plans to allow participants to elect not to take joint and survivor annuities, respondent contends that it necessarily follows that if a plan offers an annuity, a joint and survivor annuity must be the normal form of distribution under the plan. We disagree.

The literal, grammatical construction of the statute is incompatible with respondent's conjunctive interpretaton of subparagraphs (A) and (E). Literally, subparagraph (A) requires only that annuity benefits (if any) provided by a plan have the effect of a qualified joint and survivor annuity. Literally, subparagraph (E) requires only that a participant who is to receive an annuity be allowed to elect not to take a qualified joint and survivor annuity. It is a nonsequitur to conclude as respondent has that the normal form of distribution under a plan which offers an annuity is mandated by either of those subparagraphs alone or both together. The statute is unambiguous; in actuality, respondent simply has created an additional requirement and has added it to the statute.

Respondent has added the requirement that if an annuity is

offered under a plan, for the plan to qualify under section 401(a), the normal form of benefit distribution must be a qualified joint and survivor annuity. Respondent cites section 1.401(a)–11(a), Income Tax Regs., as supporting this position. The cited regulation provided no reasoning to support respondent's interpretation of the statute, but merely provides one illustration of the application of his interpretation to facts similar to those herein.

The first example provided in section 1.401(a)–11(a)(3), Income Tax Regs. (hereinafter example (*1*)) postulates a plan under which a participant may elect any one of five alternate methods of benefit distribution: (1) A lump-sum cash payment; (2) a lump-sum distribution of stock in the employer-corporation; (3) five equal annual cash payments; (4) a life annuity; or (5) a combination of the preceding four options. If a participant in the hypothetical plan did not elect otherwise, he would receive a lump-sum cash payment. In such a situation, the example concludes that:

Unless the [hypothetical plan] either discontinues the life annuity payment option or is amended to provide that the balance of a participant's individual account will be paid to him in a force having the effect of a qualified joint and survivor annuity except to the extent that the participant elects another form of benefit payment, the trust established under the plan will fail to qualify under section 401(a). [Sec. 1.401(a)–11(a)(3), example (*1*), Income Tax Regs.]

No reasoning is provided to support the result. Nor is the textual general rule provided by the regulation more helpful in explaining why the given result should obtain.

Section 1.401(a)–11(a)(1), Income Tax Regs., contains a textual general rule and provides in pertinent part as follows:

Sec. 1.401(a)–11 Qualified joint and survivor annuities.

(a) *General rule—*(1) *Required provisions.* A trust, * * * which is a part of a plan providing for the payment of benefits in any form of a life annuity * * * shall not constitute a qualified trust under section 401(a)(11) and this section unless such plan provides that:

(i) Unless the election provided in paragraph (c)(1) of this section has been made, such benefits will be paid in a form having the effect of a qualified joint and survivor annuity * * *

\*       \*       \*       \*       \*       \*       \*

(ii) Any participant may elect, as provided in paragraph (c)(1) of this section, not to receive such benefits in the form of a qualified joint and survivor annuity; * * *

The format of the regulation shows a clear correlation between

subparagraph (A) of the statute and clause (i) of the regulation and between subparagraph (E) of the statute and clause (ii) of the regulation. Neither clause (i) nor clause (ii) of the regulation supports respondent's interpretation of the statute. Taken together, those clauses merely restate the literal requirements of subparagraphs (A) and (E) of the statute. Thus, example (1) is a bald assertion and is not supported by the text which it is supposed to illustrate by example.

In fact, support for example (1) in the text of the regulations was explicitly withdrawn by the Secretary of the Treasury. Respondent's temporary regulation, 26 C.F.R. sec. 11.401(a)–11, 40 Fed. Reg. 45810, issued on September 29, 1975, provided as follows:

A trust, which is part of a plan providing for the payment of benefits in any form of life annuity * * * shall not constitute a qualified trust * * * unless such a plan provides that these benefits must be paid in a form having the effect of a qualified joint and survivor annuity. *Therefore, any benefits which may be paid in any form of a life annuity must be paid in a form having the effect of a qualified joint and survivor annuity* * * * [Emphasis added.]

The underscored portion was deleted from the text of the regulation before it was issued as a final regulation. We find that deletion to be most appropriate, because it illustrates the point that we have made above. The deleted sentence is a conclusion which does not consequently follow from the idea expressed in the sentence which precedes it.

Notwithstanding the deletion of the underscored portion of the temporary regulation, example (1) became part of section 1.401(a)–11, Income Tax Regs.[5] Respondent contends that his

---

[5] Respondent's position in this case coincides with the rule expressed in example (1). Nevertheless, we are drawn to speculate about the strength of respondent's convictions. We wonder whether there is a causal connection between the deletion of language from the temporary regulation and respondent's hesitancy to issue a final notice of determination in this case; we ponder the reasons for inconsistent determinations as to the qualification of other plans having similar provisions.

The proposed adverse determination as to the qualification of the plan was mailed on Oct. 1, 1976, and relied explicitly on the applicability of a temporary regulation which had been issued on Sept. 29, 1975. Petitioner's appeal of the proposed adverse determination to the Regional Office of the Employee Plans Division of the Internal Revenue Service was denied in short order. On Nov. 18, 1976, petitioner appealed the proposed adverse determination to the National Office of the Employee Plans Division of the Internal Revenue Service. Soon after, on Jan. 4, 1977, the temporary regulation was supplanted by the final regulation. By July 1, 1977, when the petition in this case was filed, petitioner's appeal to the National Office was still pending. If the validity of example (1) and the rule that it expresses were as obvious as respondent would have us believe, it is inexplicable why the appeal to the National Office

interpretation of the statute and the rule of example (*1*) are in line with congressional intent as expressed in legislative history.[6] In this case, the statute is not so ambiguous that we must resort to an interpretation of legislative history to divine the meaning of the statute. Cf. *Tufts v. Commissioner*, 70 T.C. 756 (1978), on appeal (5th Cir., Apr. 23, 1979). However, even if we were to consider the legislative history behind section 401(a)(11), it would not mandate the result sought by respondent.

Under his reading of the legislative history behind section 401(a)(11), respondent concludes that a qualified joint and survivor annuity must be provided automatically, unless a participant elects otherwise, if a plan offers a life annuity. Petitioner contends that the applicable legislative history only supports the literal requirements of subparagraphs (A) and (E). Having thoroughly examined the applicable passages, we conclude that the legislative history provides ample support for the literal requirements of subparagraphs (A) and (E), but no direct support for the added requirement imposed by respondent.

The following excerpt from the Conference report on the Employee Retirement Income Security Act of 1974 summarizes the intent of Congress with respect to the provision of joint and survivor annuities and illustrates the grounds on which we base our conclusion.

*Joint and survivor annuities*
Under the conference substitute, when a plan provides for a retirement benefit in the form of an annuity, and the participant has been married for the one-year period ending on the annuity starting date, the plan must provide for a joint and survivor annuity. * * *
In the case of an employee who retires, or who attains the normal

---

would be so prolonged. It could be inferred that the deltion of text from the temporary regulation, coming as an intervening factor, caused the National Office to question the propriety of their earlier position.

To further undermine the characterization of this issue as obvious, the Commissioner apparently has not denied qualification to all plans which contain provisions for annuities similar to the provisions of the plan. This lack of uniformity suggests that the Commissioner may not be as certain of his position as respondent would lead us to believe.

Nevertheless, for purposes of deciding this case, we have not taken into account the demonstrated hesitancy on the part of the Commissioner or the inferences to be drawn therefrom or his lack of evenhandedness in determinations concerning similar plans. Rather, we have confined ourselves to the merits of the legal arguments presented.

[6]Sec. 401(a)(11) was added to the Internal Revenue Code by the Employee Retirement Income Security Act of 1974, Pub. L. 93–406, 88 Stat. 935.

retirement age, the joint and survivor provision is to apply unless the employee elected otherwise.

In the case of an employee who is eligible to retire prior to the normal retirement age under the plan, and who does not retire, the joint and survivor provisions need not be applicable under the plan, unless the employee made an affirmative election. * * *

 *      *      *      *      *      *      *

The employee is to be afforded a reasonable opportunity, in accordance with regulations, to exercise his election out of, (or, before normal retirement age, possibly into) the joint and survivor provision before the annuity starting date (or before he becomes elegible for early retirement). * * * [Conf. Rept. 93–1280 (1974), 1974–3 C.B. 440.]

## Other committee reports support our conclusions.

Under present law, there is no requirement that a qualified retirement plan must offer the option of a survivor annuity. This can result in a hardship where an individual primarily dependent on his pension as a source of retirement income is unable to make adequate provision for his spouse's retirement years, should he predecease her. To correct this situation, the committee provision requires that a joint and survivor annuity be offered as an option with respect to any benefit under a qualified retirement plan which is payable as an annuity. If the option is exercised, and a survivor annuity is elected, the participant's own annuity may be reduced, so that the value of the joint and survivor annuity and the value of the annuity the participant would have been entitled to receive had the option not been exercised are actuarially equivalent. [S. Rept. 93–383 (1973), 1974–3 C.B. (Supp.) 225.]

Qualified plans that provide annuities must pay benefits in the form of a joint and survivor annuity, giving the surviving spouse an annuity equal to at least 50 percent of the annuity paid during the joint lives, unless the participant elects in writing before the annuity starting date not to take a joint and survivor annuity. [H. Rept. 93–807, (1974), 1974–3 C.B. (Supp.) 263.]

Substantively, the first paragraph of those quoted above requires that when a plan provides for an annuity, it must provide for a joint and survivor annuity in order to be a qualified plan. Operationally, the first paragraph acts as an antecedent to the paragraphs which follow it, and the second, third, and fourth paragraphs accordingly refer back to the first. The key clause occurs in the first paragraph and is as follows: "when a plan provides for a retirement benefit in the form of an annuity." That conditional clause both precedes and frames the entire discussion of joint and survivor annuities as a topic by expressing two preeminent ground rules for the discussion. First, the clause indirectly restates the obvious: a plan may be qualified plan under section 401(a) even though it does not provide for an

annuity as a method of benefit distribution. Second, the clause limits the applicability of the principles to be discussed to *times when* an annuity is provided for, i.e., *situations in which* an annuity is provided for, not generally including *plans which* provide for annuities. The distinction is fine but meaningful, and it defines the point at which petitioner and respondent part company in their interpretations of the legislative history.

If the clause "when a plan provides for a retirement benefit in the form of an annuity" is interpreted to mean "if a plan provides for a retirement benefit in the form of an annuity," then the principles which follow that clause are conditional only upon the inclusion of an annuity option in the plan. Thus, the second paragraph quoted above would require that a joint and survivor annuity be the normal form of distribution. In other words, the focus under such an interpretation is solely on the terms of the plan.

On the other hand, if the clause "when a plan provides for a retirement benefit in the form of an annuity" is interpreted literally, it is temporal and it means "at the time a plan provides for a retirement benefit in the form of an annuity." Therefore, the principles which follow that clause are conditional upon the occurrence of a situation in which the plan does provide an annuity for a participant as well as upon the inclusion of an annuity option in the plan. The second paragraph quoted above then would require that a joint and survivor annuity be the normal form of distribution in any situation in which an annuity is actually provided. The focus under such an interpretation is on the occurrence of a situation as well as on the terms of the plan.

The crux of the foregoing distinction is the difference in construction between the first paragraph of the legislative history quoted above and subparagraph (A). The conditional word in subparagraph (A) is "if"; the conditional word in the first paragraph quoted above is "when." The statute abstractly focuses on the terms of a plan for prospective application; the legislative history focuses on the result which is demanded in a specific factual circumstance. Similarly, the second paragraph of the legislative history quoted above focuses on an employee "who retires, or who attains the normal retirement age." Those conjunctive clauses focus on the actual happening of an event, and it is *when* that event happens that the joint and survivor provision is *to apply*. That is, the legislative history presupposes

a fact and proceeds from that supposition. When such a supposition of fact is not made, as in subparagraph (A), the rule sought by respondent is without support.

Thus, the legislative history behind section 401(a)(11) does not clearly establish that Congress intended a qualified joint and survivor annuity to be the normal form of distribution under a plan which offers an annuity. Had Congress so intended, we are convinced that some more specific language than that found in the various congressional reports would have been used there or, more appropriately, in the statute. From the language actually used by Congress, we can only conclude that Congress did not intend to require that a qualified joint and survivor annuity be the normal form of distribution under a plan that offers an annuity. Even if we strain our reading of legislative history and ignore the construction chosen by Congress, intent to require that a qualified joint and survivor annuity be the normal form of distribution under a plan that offers an annuity can be attributed to Congress only inferentially. An interpretation of legislative history having such roots can hardly be allowed to negate the effect of clear statutory language, even though respondent considers such clear statutory language to be less than comprehensive in its literal scope.

Moreover, we note that the foregoing result does not thwart the policy objectives of the Employee Retirement Income Security Act of 1974 as evidenced in section 401(a)(11). If a plan provides an annuity as a normal form of distribution, but not as a qualified joint and survivor annuity, the surviving spouse of an employee who is covered by that plan would be entitled to no benefits if the employee were to die soon after becoming eligible for benefits. To protect the surviving spouse in such a situation, the provision existing as subparagraph (A) was enacted. See H. Rept. 93-779 (1974), 1974-3 C.B. 244, 308. In the case before us, however, an employee will receive a lump-sum distribution of all benefits if no other option is elected. In this instance, the interests of a surviving spouse are protected because the surviving spouse would not be deprived entirely of benefits as was the case above, but rather would have access to the amount distributed as a lump sum according to applicable State law. In the instant case, if an employee does choose to receive benefits in the form of an annuity, the protection envisioned by Congress is provided by the plan because an annuity under the plan

automatically is provided in the form of a joint and survivor annuity. In other words, we believe that the intent of Congress was to secure the retirement income of employees by requiring that a surviving spouse not be deprived of benefits through the artifice of making an individual annuity the normal form in which annuity benefits are payable. Petitioner's plan does not violate that intent, but rather carries it into practice.

Respondent notes the requirement in section 8.01 of the plan that a participant may elect to receive an annuity only with the consent of the administrative committee. Respondent argues that the consent requirement itself violates the requirements of subparagraphs (A) and (E) and causes the plan not to qualify under section 401(a). We disagree. Neither subparagraph (A) nor subparagraph (E) requires that a plan unconditionally offer an annuity to a plan participant. We have decided that subparagraph (A) requires only that annuity benefits under a plan have the effect of a qualified joint and survivor annuity; subparagraph (E) requires only that a participant be allowed to elect not to take a qualified joint and survivor annuity. The inclusion of a consent requirement in the plan violates neither the requirements of subparagraph (A) nor those of subparagraph (E). Because neither of those subparagraphs requires that a plan unconditionally offer an annuity to plan participants, because the requirements of neither subsection are violated by the inclusion of a consent requirement in the plan, and because respondent did not expand the scope of this argument beyond citations to subparagraphs (A) and (E),[7] we reject respondent's argument.

In summary, respondent's interpretation of the statute adds a requirement for qualification of a plan under section 401(a) that is not literally expressed in the statute. The textual explanation of subparagraphs (A) and (E) that is found in respondent's regulations does not articulate the added requirement but rather is limited to the literal content of the statute. The only regulatory exposition of the added requirement is in an example. The example provides no basis for the addition of a new requirement to the literal statutory requirements, nor does it even acknowledge that it introduces a new requirement. The

---

[7]See n. 3 *supra.*

example simply concludes that the plan provided by way of example does not qualify because it breaches the phantom requirement. The legislative history behind subparagraphs (A) and (E) does not support the injection of this new requirement into the scheme which Congress provided statutorily. Because the statute as written is unambiguous and because there is no valid reason for adding a requirement to those already provided by the statute, we must reject respondent's position as incorrect. Accordingly, since example (*1*) of section 1.401(a)–11(a)(3), Income Tax Regs., applies the same mistaken interpretation of law, it is invalid. As stated by the Supreme Court in *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129 (1936):

> The power of an administrative officer or board to adminster a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. *Lynch v. Tilden Produce Co.*, 265 U.S. 315, 320–322 [(1924)]; *Miller v. United States*, 294 U.S. 435, 439–440 [(1935)], and cases cited. * * * [297 U.S. at 134.]

More recently, the Supreme Court stated, "Neither we nor the Commissioner may rewrite the statute simply because we may feel that the scheme it creates could be improved upon." *United States v. Calamaro*, 354 U.S. 351, 357 (1957).

The example in the regulations is interpretative. Congress did not confer upon the Secretary of the Treasury the power to legislate. The example is, therefore, entitled to less weight than a legislative regulation. *Fishman v. Commissioner*, 51 T.C. 869, 872 (1969). See also *United States v. Cartwright*, 411 U.S. 546 (1973); *Joseph Weidenhoff, Inc. v. Commissioner*, 32 T.C. 1222 (1959); *Parker Oil Co. v. Commissioner*, 58 T.C. 985 (1972); *Morris v. Commissioner*, 70 T.C. 959 (1978); *Matheson v. Commissioner*, 74 T.C. 837 (1980).

Having rejected respondent's argument that a plan which offers a life annuity as a form of benefit distribution must provide a qualified joint and survivor annuity as the normal form of distribution, we conclude that section 8.01 of the plan

does not violate the requirements of section 401 (a)(11), and we declare that the plan is a qualified plan under section 401(a).

*An appropriate decision will be entered.*

Reviewed by the Court.

CHABOT, *J.*, concurring: I agree with the conclusion that example *(1)* of section 1.401(a)–11(a)(3), Income Tax Regs., is invalid.

Also, I agree that the cited provisions of the statute (subpars. (A) and (E) of sec. 401(a)(11)) do not clearly prohibit (as a condition for tax-qualified status) the administrative committee consent provision in the plan before us. Similarly, the regulations include no such prohibition.

However, this latter holding should not be taken as a conclusion that the regulations could not validly deal with potential problems in administrative committee consent provisions.

The statute provides in effect that, as between a single life annuity and a joint and survivor annuity, the latter is the preferred (but not mandatory) form after retirement. Interposition of an administrative committee consent requirement might provide a method of defeating the statutory preference, if (for example) the administrative committee were to withhold its consent for an annuity benefit unless the employee "opted out" of the joint and survivor form.[1] Such a condition for administrative committee consent may conflict with both the statute and the Congress' policy.

It may be that the regulations could validly prevent such a conditioning of administrative committee consent.

This is not an occasion to deliver an advisory opinion as to the validity of a hypothetical regulation, but merely an observation that the status of such a hypothetical regulation has not been dealt with by the opinion of the Court in the instant case.

TANNENWALD, *J.*, agrees with this concurring opinion.

---

[1] There is no finding in the instant case of any such conditioning of administrative committee consent.