THE HOME GROUP, INC., AS AGENT UNDER THE PROVISIONS OF TREASURY REGULATION SECTION 1.1502-77(d) FOR CITY INVESTING COMPANY AND THE CONSOLIDATED GROUP OF WHICH CITY INVESTING COMPANY WAS THE COMMON PARENT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17739-82.        Filed August 18, 1988.

*John S. Breckinridge, Jr.,* and *F. Brook Voght,* for the petitioner.

*David N. Brodsky* and *Robert J. Foley,* for the respondent.

## OPINION

GERBER, *Judge:* This controversy was generated by the parties' differing computations under Rule 155,[1] pursuant to our opinion rendered in this case.[2] The Rule 155 controversy centered about section 593, which places limits upon the addition to the reserve for bad debts of certain savings banks. See sec. 593(b)(1). During the taxable year in question, petitioner's consolidated subsidiary was a savings bank subject to section 593. This section also permits a taxpayer broad discretion to determine the amount of the addition to the reserve, not to exceed the limits set forth in section 593(b). Section 593(b)(1) provides, in pertinent part, as follows:

SEC. 593. RESERVES FOR LOSSES ON LOANS.
  (b) ADDITIONS TO RESERVES FOR BAD DEBTS.—
    (1) IN GENERAL.—For purposes of section 166(c), the *reasonable addition* for the taxable year to the reserve for bad debts for any taxpayer described in subsection (a) *shall be* an amount equal to the sum of—
      (A) *the amount determined* under section 166(c) to be a reasonable addition to the reserve for losses on nonqualifying loans, plus
      (B) *the amount determined by the taxpayer* to be a reasonable addition to the reserve for losses on qualifying real property loans * * *

---

[1]All Rule references are to this Court's Rules of Practice and Procedure and all section references are to the Internal Revenue Code of 1954 as amended and in effect during the period in controversy.

[2]*City Investing Co. v. Commissioner,* T.C. Memo. 1987-36. In that opinion, this Court considered whether unpaid commissions to insurance sales agents on deferred premium installment payments are deductible in the year the policy is issued pursuant to sec. 832(b)(6). That case involved the taxable years 1968, 1969, and 1970.

[Emphasis added. The statutory language was modified for 1970, but the emphasized portion was unchanged from that in effect for 1968 and 1969.]

The regulations further amplify a taxpayer's freedom and discretion to reduce or increase (up to the limits) the amount of the bad debt reserve addition, as follows:

the addition to the reserve for losses * * * for any taxable year beginning before July 12, 1969, is the amount which the taxpayer determines to constitute a reasonable addition to such reserve for such year—

[This amount cannot exceed the statutory limitations under three alternate methods.]

* * * in the case of a subsequent adjustment * * * which has the effect of permitting an increase, or requiring a reduction, in the amount claimed [for the reserves,] * * * [the amount] of such addition may be recomputed under whichever method the taxpayer selects for the purposes of such recomputation, irrespective of the method initially applied for such taxable year. However, a taxpayer may not subsequently reduce the amount claimed in the return * * * for the purpose of obtaining a larger deduction in a later year.

[Sec. 1.593-6(a), Income Tax Regs.]

These regulations were changed by T.D. 7549, filed May 17, 1978, 1978-1 C.B. 185. The change significant to this proceeding concerned the elimination of the last sentence of section 1.593-6(a)(3), Income Tax Regs., prohibiting reductions in the reserve allowance for the purpose of obtaining a larger deduction in a later year. Accordingly, the regulation section for taxable years beginning after July 11, 1969, had no similar regulatory restriction. See section 1.593-6A(a)(1), Income Tax Regs., applicable to taxable years beginning after July 11, 1969, and which was not in effect for petitioner's 1969 taxable year.

Pursuant to these provisions, petitioner's subsidiary, for its 1969 taxable year, elected on the consolidated return to claim the maximum permissible addition under section 593 to its bad debt reserve of $938,762. Because of respondent's adjustments to petitioner's consolidated 1969 return[3] the maximum limit to said bad debt reserve was raised by the amounts of $1,634 and $44,209 in different parts of respondent's notice of deficiency.

---

[3]The increase in the limit is attributable to concessions by petitioner and the holding in City I which was unfavorable to petitioner.

As part of the Rule 155 activity between the parties, they exchanged letters and computational proposals. Petitioner advised respondent that it wished to forego all of the $938,762 reserve additions originally claimed and the $1,634 and $44,209 additions "determined" by respondent. Respondent agreed that the petitioner may exercise its discretion to forego the $44,209 reserve addition, but disagreed that petitioner is entitled to forego the $938,762 addition claimed on the return.[4]

Respondent contends that petitioner is not entitled to forego the $938,762 amount on two grounds: (1) Petitioner's choice to forego the amount originally claimed on the return and not again raised until after our opinion (*City Investing Co. v. Commissioner*, T.C. Memo. 1987-36) constitutes the raising of a new issue prohibited during the Rule 155 portion of the proceeding; and (2) section 1.593-6(a), Income Tax Regs., prohibits petitioner from now changing the reserve addition because it is "post-year tax planning."[5]

The difference in the parties' proposed computations result in about a $20,000 difference in petitioner's tax liability for the years before us, but may have a larger effect, in a subsequent year, in connection with petitioner's basis in its subsidiary savings bank which was sold in 1982. Interestingly, petitioner's computation results in a larger deficiency because it seeks to forego the $44,209 and $1,634 additions presented by respondent in the statutory notice.

### Rule 155—Is This Matter a New Issue?

Under Rule 155, parties are required to submit "computations pursuant to the Court's determination of the issues, showing the correct amount of the deficiency * * * to be entered as the decision." Parties are not permitted to raise new issues or matters in connection with the Rule 155

---

[4]We are uncertain why, initially, respondent did not treat the $1,634 amount similarly to the $44,209 amount. Petitioner emphasized this difference in treatment in its memorandum in support of its Rule 155 computation. Respondent in his memorandum in response to petitioner's Rule 155 memorandum advised that the $1,634 amount should be handled in the same manner as the $44,209 amount. In any event, the significant distinction is clear—respondent agrees that petitioner is permitted a choice regarding the $44,209 and $1,634 amounts, but not the $938,762 amount.

[5]The specific language of the regulation applicable to taxable years beginning prior to July 12, 1969, is: "However, a taxpayer may not subsequently reduce the amount claimed in the return for a taxable year for the purpose of obtaining a larger deduction in a later year."

computations. *Bankers Pocahontas Coal Co. v. Burnet,* 287 U.S. 308 (1932). The starting point for the computation is the statutory notice of deficiency from which the parties compute the redetermined deficiency based upon matters agreed by the parties or ruled upon by the Court. *Whitham v. Commissioner,* a Memorandum Opinion of this Court dated January 30, 1953 (12 T.C.M. 71, 22 P-H Memo T.C. par. 53,031.)

The Court's redetermination and the parties' agreed items usually affect items of income and deductions which raise or lower taxable income. It is also normal and usual for certain purely mathematical adjustments to be triggered by the change of taxable income, adjusted gross income, etc. Some examples of the automatic mathematical changes are the percentage limit on contributions, medical deductions, or investment tax credits. See *Lustman v. Commissioner,* T.C. Memo. 1960-116, affd. 322 F.2d 253 (3d Cir. 1963). On occasion, a change in basis may generate a concomitant change in depreciation. See *Superior Yarn Mills, Inc. v. Commissioner,* 228 F.2d 736 (4th Cir. 1955). To some extent, this case is analogous to the *Superior Yarn Mills, Inc. v. Commissioner, supra.* Here, the $44,209 and $1,634 increases in the section 593 limitation for reserve additions did not become available to petitioner until the redetermined deficiency was calculated. Petitioner should have the discretion under section 593(b) and the regulations to decide how much, if any, the reserve addition is to be increased up to the newly calculated limit. That clearly is not a new issue and fits within the same category as other purely mathematically generated computational items.

A more difficult question concerns the treatment of the $938,762 addition to the reserves representing the maximum amount petitioner was entitled to and did utilize on its 1969 consolidated income tax return. There is nothing in the parties' agreements or our opinion which automatically triggers consideration of this specific portion of the reserve.

The parties' agreed issues, however, did generally open the question of the reserve by permitting it to increase, if petitioner desired. Conversely, our opinion and/or the parties' agreement could have mandatorily reduced the maximum reserve limit permissible under the regulation. Here,

petitioner seeks to voluntarily reduce it now that our opinion is known and all factors have been considered.

In another regard, section 593 and pertinent regulations permit liberal discretion to taxpayers to determine the amount of the reserve, up to the limit. Section 593 and the regulation[6] do not limit this selection or election to the time of filing the original return. Respondent does not possess statutory authority to rule upon such elections because the statute vests the election solely within the discretion of taxpayers. Accordingly, so long as a taxable year remains open, it would not seem to make a difference when a taxpayer determined to increase or forego some portion of a potential reserve allowance. Moreover, a taxpayer might not be able to determine the appropriate amount of reserve addition until after our opinion is issued. Although that aspect would seem to more aptly apply to the $44,209 and $1,634 increase in the statutory limit, overall it is no less applicable to the concept of the reserve, as a whole.

Other than a portion of the section 1.593-6(a), Income Tax Regs. (remaining effective for taxable years beginning before July 12, 1969) there is no authority or discretion statutorily reserved to respondent to deny petitioner's reserve addition election, so long as the taxable year is open. In some instances, the so-called binding election rule precludes taxpayers from amending returns and changing accounting treatment of certain items. See *Klinghamer v. Brodrick* (D. Kan. 1956, 51 AFTR2d 1785, 56-2 USTC par. 9842), affd. 242 F.2d 563 (10th Cir. 1957); *Gibson & ABC, Inc. v. Commissioner,* 89 T.C. 1177 (1987). The section 593 regulation, however, specifically states that the method of computation of reserves is not a binding election. This seems to imply that the method of computing the maximum allowable deduction may be changed in amended returns. Although that regulation language would not literally apply (because petitioner is not attempting to use the maximum deduction formula, petitioner wants to eliminate entirely a reserve for that year), it reflects the liberality of the statute and regulation.

---

[6]The question of whether the regulation under sec. 593 is applicable to tax years beginning prior to July 12, 1969, is discussed *infra.*

We, accordingly, hold that the section 593 reserve addition is a mechanical or mathematical adjustment and a proper matter for Rule 155 consideration.[7] Due to the congressionally permitted liberality and the broad discretion afforded to taxpayers in section 593, coupled with the effect of the parties' agreement and our opinion on the reserve, we find that a reserve addition or reduction would not be untimely for consideration as part of the Rule 155 portion of this case.

### Section 1.593-6, Income Tax Regs.— Is Petitioner Entitled To Change Reserve Additions Merely for "Future-year Tax Planning"?

We now consider respondent's position that petitioner's 1969 tax year comes within the old regulation section 1.593-6(a), Income Tax Regs., which contained the following prohibition: "a taxpayer may not subsequently reduce the amount claimed in the return * * * for the purpose of obtaining a larger deduction in a later year." Although one could reasonably argue that there is some distinction between the $44,209 and $938,762 amounts for purposes of respondent's new issue or "non-Rule 155" subject matter arguments, we are unable to see any distinction regarding the application of section 1.593-6(a), Income Tax Regs. Under that section, as literally applied for tax years beginning prior to July 12, 1969, petitioner's contemporaneous choice to forego any amount of the reserve would be, in the context of this case, "future-year tax planning" ostensibly prohibited by the regulation. The mere passage of time in the administrative handling of this case[8] has placed petitioner in a consummate position of retrospective planning because 18 years have elapsed. Any reduction in the amount of claimed reserve addition or petitioner's foregoing the increased limit would both have the same effect on future taxable years.[9] Moreover, there is no requirement

---

[7]No additional evidence is necessary to consider the parties' controversy over the reserve addition. The income tax return and notice of deficiency, which are already a part of the record in this case, contain sufficient information to compute the limits and for petitioner to exercise its discretionary election.

[8]The earliest taxable year before us is 1969 and this case was not petitioned to this Court until late in 1982.

[9]Although the parties have not clearly delineated the computational distinctions, petitioner's foregoing of the additional reserve generated by our redetermination may also have affected

that reserve amounts that are not claimed must be used in any particular order.

Petitioner contends that to the extent that respondent argues that the last sentence of section 1.593-6(a), Income Tax Regs., is applicable to petitioner's 1969 tax year, it is invalid. We agree with petitioner.

Regulations are either statements or interpretations of law, depending upon congressional mandate, which we feel compelled to follow unless they are an abuse of discretion or do not comport with the statute and/or the congressional intent. *Estate of Pullin v. Commissioner,* 84 T.C. 789, 795-796 (1985). Where Congress expressly prescribes authority in a particular statute to expand, interpret, or define the terms of the statute, the resultant regulation is considered "legislative" and is treated more like the statute than regulations promulgated under section 7805. *Estate of Pullin v. Commissioner, supra* at 796.

Regulations promulgated under section 7805 are considered "interpretive" (*United States v. Vogel Fertilizer Co.,* 455 U.S. 16 (1982); *Estate of Pullin v. Commissioner, supra* at 796 ), and are entitled to less weight than legislative regulations. *Estate of Boeshore v. Commissioner* 78 T.C. 523 (1982); *BBS Associates, Inc. v. Commissioner,* 74 T.C. 1118, 1132 (1980), affd. without published opinion 661 F.2d 913 (3d Cir. 1981). The regulation, section 1.593-6(a), Income Tax Regs., is "interpretive."

Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948). A regulation is not a reasonable statutory interpretation unless it harmonizes with the statute's "origin and purpose." *United States v. Vogel Fertilizer Co., supra* at 26; *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 477 (1979); *Estate of Pullin v. Commissioner, supra* at 797. The last sentence of the regulation at hand is at odds with the statute and the preceding portion of section 1.593-6(a), Income Tax Regs., and we find the sentence to be invalid.

the amount of tax due for the 1969 taxable year. As previously noted, the net difference between petitioner's and respondent's computations results in about a $20,000 difference, which is a small amount relative to the total deficiency.

Here the statute (sec. 593) grants wide latitude and complete discretion to taxpayers to decide the amount of available reserves they wish to claim in any year, not to exceed the statute's limits. The last sentence of the regulation is ambiguous and does not permit the flexibility intended in the statute and qualified in the regulation subsection preceding the sentence in question.

To reflect the foregoing,

*A decision will be entered reflecting the amounts computed by petitioner.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, WILLIAMS, WELLS, RUWE, and WHALEN, *JJ.,* agree with this opinion.