801 F.2d 364
 58 A.F.T.R.2d 86-5837, 86-2 USTC P 9680
 WYOMING COMMUNITY DEVELOPMENT AUTHORITY, Plaintiff/Appellant,
v.
James A. BAKER, III, Secretary of the Treasury, Samuel R.
Pierce, Jr., Secretary of Housing and Urban Development,
Philip Abrams, Assistant Secretary of Housing and Urban
Development, and Maurice L. Barksdale, Assistant Secretary
of Housing and Urban Development, Defendants/Appellees.
 No. 85-1875.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 10, 1986.
 
 Alvin Wiederspahn, Cheyenne, Wyo., for plaintiff/appellant.
 Nancy G. Morgan (Glenn L. Archer, Jr., Asst. Atty. Gen., and Michael L. Paup with her, on the brief), Tax Div., Dept. of Justice, Washington, D.C., for defendants/appellees.
 Before BARRETT, McWILLIAMS and SEYMOUR, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Wyoming Community Development Authority (Authority)[1] appeals from the dismissal by the district court of its suit for judicial review of final agency action. The district court found that it lacked subject matter jurisdiction.
 
 
 2
 This case arose under the Mortgage Subsidy Bond Tax Act of 1980 (Act), pertinent regulations, and various revenue procedures. The Act contains conditions which, if met, allow state organizations such as the Authority to offer reduced rate financing for housing within the state. The Act provides that if mortgage loans are made in certain targeted areas designated by the Department of Housing and Urban Development and the Internal Revenue Service as "areas of chronic economic distress" (ACED), the interest paid on the bonds issued by the Authority is tax-exempt. 26 U.S.C. Sec. 103A(k)(3)(B). Without the ACED designation the bonds cannot be marketed as tax-exempt.
 
 
 3
 The State of Wyoming, on behalf of the Authority, obtained ACED designation for four counties in Wyoming in June, 1982.[2] The application for ACED designation was sent first to the Assistant Secretary for Housing/Federal Housing Commissioner of the Department of Housing and Urban Development (HUD) and then to the Assistant Commissioner of Internal Revenue Service (IRS) for concurrence or comment pursuant to 26 U.S.C. Sec. 103A(k)(3)(B)(ii) and Rev.Proc. 81-30 Section 3.02. The assistant Secretaries granted the designation on the basis of energy impaction and the bonds were issued.
 
 
 4
 To achieve ACED status the State convinced the Secretaries that the energy boom in the 1970's and early 1980's caused a rapid influx of workers seeking employment in energy-related industries into certain areas of Wyoming. This sudden, drastic population growth strained community infrastructures, resulting in a shortage of available housing for these new residents. Therefore, the State argued, energy impaction ought to qualify these areas in Wyoming for ACED status.
 
 
 5
 Although ACED status was granted in June, 1982, the Authority was notified by letter dated September, 1983, that ACED status was withdrawn. The Secretaries asserted that, after reconsideration, energy impaction was not a proper criteria for determining ACED status under the Act and the Wyoming counties did not otherwise qualify within the statutory ACED requirements.
 
 
 6
 The bonds which had already been issued were grandfathered in by the agencies despite withdrawal of ACED designation. (R., Vol. II, p. 463 n. 9.) The Authority had no power to issue additional bonds until July 18, 1984, when the New Tax Reform Act of 1984 was effective. Two days later, the Authority issued $85,000,785 worth of new mortgage subsidy bonds.
 
 
 7
 The Authority filed the present action seeking judicial review of the Secretaries' decision to withdraw ACED designation claiming that the decision was arbitrary and capricious and in excess of statutory authority. Further, the Authority contended that it had not been accorded any notice or opportunity to be heard, thereby denying it due process. The Authority also filed a Motion for Stay of the Secretaries' action. The Secretaries then filed a motion to dismiss alleging, inter alia, that the action for judicial review was barred by the Anti-Injunction Act, 26 U.S.C. Sec. 7421(a), and that review was improper because the Authority had failed to exhaust its administrative remedies. The district court heard arguments on the Motion for Stay but reserved a ruling until the Secretaries' motion to dismiss was argued and considered.
 
 
 8
 A hearing on the motion to dismiss was held before a United States Magistrate who found, inter alia, that the Authority had failed to exhaust its administrative remedies. The Magistrate recommended that the motion to dismiss be granted because the court did not have subject matter jurisdiction. The Authority filed objections to the Magistrate's findings and oral argument was held before the district court. The district court adopted the Magistrate's findings and further found that the Anti-Injunction Act barred the suit.
 
 
 9
 The Authority raises the following issues on appeal: (1) Does the Anti-Injunction Act bar this action as one restraining the assessment or collection of taxes where the Authority only sought review of the Secretaries' action in withdrawing an administrative designation and was otherwise without a legal remedy; and (2) Did the Authority fail to exhaust its administrative remedies by not first requesting a pre-issuance ruling and then seeking Tax Court review for a declaratory judgment or seeking a post-issuance ruling from the IRS after the bonds were issued?
 
 
 10
 I. Exhaustion of Administrative Remedies.
 
 
 11
 The Magistrate found that the Authority failed to exhaust its administrative remedies, and therefore, the court could not properly exercise subject matter jurisdiction. The Magistrate found that IRS Rev.Procs. 84-48 and 84-49 were administrative remedies, available at various stages, which the Authority had not pursued. Revenue Procedure 84-48 would have allowed the Authority to obtain a prospective ruling on the tax-exempt status of the bonds. The Government argued that following such a procedure would have provided the Authority an adequate forum in which to raise questions about the propriety of the Secretaries' action in withdrawing ACED status, a related but collateral issue to the tax-exempt status of the bonds. The Authority countered that Rev.Proc. 84-48 was not available because the previously issued bonds were grandfathered in, the issue was moot, and there was no case or controversy. The Magistrate also noted that Rev.Proc. 84-49, which provided an opportunity to obtain a post-issuance ruling, was available to the Authority as a potential remedy after the bonds had been issued.
 
 
 12
 In their appellate briefs the parties discussed the applicability of a third Rev.Proc., Rev.Proc. 81-30. This rev.proc. appears to provide more specific guidance, in the context of this case, than either Rev.Proc. 84-48 or 84-49. Revenue Procedure 81-30 provides in pertinent part:
 
 SEC. 3. PROCEDURE
 
 13
 .01 A request for approval of a state designation of a geographic area as an "area of chronic economic distress," as required by section 103A(k)(3)(A)(ii) of the Code, must be submitted in triplicate to the Assistant Secretary for Housing/Federal Housing Commissioner of the Department of Housing and Urban Development (Attention: Office of State Agency and Bond Financed Programs, Room 6138, 451 7th Street, S.W., Washington, DC 20410). Section 6a. 103A-2(b)(5)(v) of the temporary regulations.
 
 
 14
 .02 The approval or disapproval by the Assistant Secretary for Housing/Federal Housing Commissioner of the Department of Housing and Urban Development (HUD) of the state designation of a geographic area as an "area of chronic economic distress" will be transmitted for concurrence or comment to the Assistant Commissioner (Technical), Internal Revenue Service, Attention:
 
 IR-81-76
 
 15
 T:1:I. 1111 Constitution Avenue, N.W., Washington, DC 20224. The Internal Revenue Service (IRS) will respond in writing to HUD within 10 working days of the receipt of HUD's approval or disapproval.
 
 
 16
 .03 If the state desires a conference because of an adverse decision on the proposed designation, representatives of HUD and IRS will attend the conference.
 
 
 17
 .04 HUD will issue the response to the state's request for approval of the state designation of a geographic area as an "area of chronic economic distress."
 
 
 18
 .05 If the issuer or a person, other than the issuer, that has a material financial interest in the issuance of prospective mortgage subsidy bonds desires to request a ruling on questions relating to the bonds other than the state designation of a geographic area as an "area of chronic economic distress," a separate request for such questions must be submitted to the IRS. Such request must comply with the requirements of Rev.Proc. 80-20, 1980-1 C.B. 633. Rev.Proc. 76-4, 1979-1 C.B. 483, as amplified by Rev.Proc. 79-12, 1979-1 C.B. 492, as amplified by Rev.Proc. 80-1, 1980-1 C.B. 579, and Rev.Proc. 81-10, 1981-13 I.R.B. 44.
 
 
 19
 Revenue Procedure 81-30 section 3.05 indicates that a ruling may be requested from the IRS on various matters. However, it states explicitly that a ruling from the IRS cannot be sought on the specific issue raised by the Authority in this case, i.e., the approval of a state's designation of an area as an area of chronic economic distress.
 
 
 20
 ".05 If the issuer ... has a material financial interest in the issuance of prospective mortgage subsidy bonds desires to request a ruling on questions relating to the bonds other than the state designation of a geographic area as an 'area of chronic economic distress, ' a separate request for such questions must be submitted to the IRS." (Emphasis added).
 
 
 21
 Therefore, it appears that seeking a ruling on this issue under this revenue procedure and, perhaps, under any other revenue procedure is improper. Rev.Proc. 81-30 sec. 3.05.
 
 
 22
 Furthermore, section 3.03 of Rev.Proc. 81-30 provides the Authority with a choice of other remedies. The section indicates that a state may request a joint HUD/IRS conference if an adverse decision is imminent. "If the state desires a conference because of an adverse decision on the proposed designation,...." Rev.Proc. 81-30 sec. 3.03. This remedy appears to be a permissive rather than mandatory. Although the section does not specify what course of action is to be followed if no such conference is requested, we perceive of only two alternatives: (1) the state must accept the determination of the Secretaries as binding, or (2) if the state determines that it does not wish to pursue further administrative action by requesting a conference (we emphasize that Section 3.03 was drafted by the IRS and appears to give a choice in this matter to the state ) then it may accept the agencies' decision as final and seek judicial review in the district court pursuant to the Administrative Procedure Act, 5 U.S.C. Secs. 551, et seq. (APA).[3]
 
 
 23
 The Secretaries suggest in their appellate brief that the Authority must pursue the remedies in Rev.Proc. 81-30 and Rev.Proc. 84-48 or 84-49 in sequential order, first seeking the joint conference and then a pre-issuance or post-issuance ruling. Nothing in the revenue procedures, however, indicates that a party seeking review should follow this route. Further, the language of Rev.Proc. 81-30 section 3.05 may preclude this path in any event. The Government has cited no authority indicating that such an ordering is actually followed.
 
 
 24
 The procedures seem to provide inconsistent remedies for a party. Revenue Procedure 84-48, a general provision, appears to require a petition for a pre-issuance ruling from the IRS and then proceeding into Tax Court for a declaratory judgment. 26 U.S.C. Sec. 7478. Revenue Procedure 84-49, also a general provision, suggests that a ruling from the IRS must be sought but only after bonds have been issued and it further indicates that only certain issues will be ruled on, without specifying what these issues might be. If a party avails itself of Rev.Proc. 84-49 it does not appear that review in the Tax Court is available. Revenue Procedure 81-30, however, seems to be specifically directed at cases such as this; and it appears to hold out the option whereby a party may seek an administrative conference or judicial review in district court. However, we cannot hold that a party must elect between these seemingly incongruous procedures at his peril. In the face of these confusing choices, it would not be equitable to hold that a party who has not followed what the IRS believes to be the appropriate path, has failed to exhaust administrative remedies, particularly because the most specific relief, that provided by Rev.Proc. 81-30, is permissive and perhaps exclusive. See, Lichtenfels v. Orr, 604 F.Supp. 271 (S.D.Ohio 1984).
 
 
 25
 Although the Magistrate found, and the district court agreed, that the Authority failed to exhaust its administrative remedies, Rev.Proc. 81-30 was never brought to its attention. While we do not believe that the Authority relied on Rev.Proc. 81-30 before the district court,[4] it nevertheless provides a predicate for the court's subject matter jurisdiction.
 
 
 26
 The provisions of Rev.Proc. 81-30 apply directly to this case. Thus, we will remand to the district court to consider the effect of this revenue procedure. The limitations of that procedure must be determined, and the court must consider the effect of Rev.Proc. 81-30 on its conclusions that it is without subject matter jurisdiction and that the Anti-Injunction Act bars the action.
 
 
 27
 VACATED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Authority is a corporate body established as an instrumentality of the Wyoming State Legislature. Wyo.Stat. Sec. 9-7-104(a) (1977)
 
 
 [2]
 Application for the approval of seven additional counties was made by the Authority in November, 1982. This application was denied although the Authority alleged that it was never advised of the agencies' decision in writing. A third application was filed by the Authority seeking ACED designations for an additional thirteen Wyoming counties. This application was rejected by the agencies. The withholding of approval for the seven counties, the rejection of the thirteen counties, and the withdrawal of approval of the four counties was challenged in the Authority's complaint. Reference to agency action in this opinion encompasses all of these
 
 
 [3]
 Unless judicial review of agency action is expressly prohibited under the statute, denial of review is not presumed even if the only jurisdictional predicate becomes Sec. 704 of the APA. See, Japan Whaling Association v. American Cetacean Society, --- U.S. ----, 106 S.Ct. 2860, 2865 n. 4, 92 L.Ed.2d 166 (1986), "A separate indication of congressional intent to make agency action reviewable under the APA is not necessary; instead, the rule is that the cause of action for review of such action is available absent some clear and convincing evidence of legislative intention to preclude review." (Citations omitted.)
 
 
 [4]
 We note that the Authority contended in its complaint that it was denied due process because it was never afforded notice and an opportunity it be heard pursuant to an internal agency memorandum (R.Vol. I, p. 8 n. 28). (No specific memorandum was cited.) We do not believe that this was a reference to Rev.Proc. 81-30. Revenue procedures are more than internal memoranda for they are published in the IRS' Cumulative Bulletin and according to the Introduction in that publication "[P]rocedures reported in the Bulletin do not have the force and effect of Treasury Department Regulations, but they may be used as precedents." We therefore believe that the Authority did not know of the existence of Rev.Proc. 81-30 until the appeal