CHARLES E. MCMANUS, III (A PROFESSIONAL LAW CORPORATION), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 31784-84R.          Filed July 24, 1989.

*Charles E. McManus, III,* pro se.
*Sarah A. Hall,* for the respondent.

SCOTT, *Judge:* This case was assigned to Special Trial Judge Francis J. Cantrel pursuant to the provisions of section 7443A(b)(1) and Rule 180 et seq.[1] After a review of the record, we agree with and adopt his opinion which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge:* By his motion, which we herein decide, respondent requests the Court to dismiss this declaratory judgment action for lack of jurisdiction.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

On March 5, 1982, Charles E. McManus, III, a professional law corporation (petitioner), applied to the District Director, Dallas, Texas (District Director) for initial qualification under section 401(a) of three retirement plans. Attached to the applications were copies of the three plans as executed on January 19, 1981, and a one-page document which amended the plans on December 18, 1981. The address appearing on the Forms 5300 and 5301, Applications for Determination for Defined Benefit and Defined Contribution Plans, was: 404 DeWald Street, Lake Charles, Louisiana, 70605 (Lake Charles address). The Internal Revenue Service (IRS) acknowledged receipt of these three applications by letters dated March 26, 1982, sent to petitioner at the Lake Charles address.

Patricia I. Islas (Ms. Islas), an IRS employee plans specialist, located Mr. McManus, petitioner's representative, by telephone in Texas to discuss the plans on September 21, 1982. During a second call to Mr. McManus in Texas on October 12, 1982, Ms. Islas indicated that changes in the plans were necessary and that she needed certain documents.

On October 13, 1982, Ms. Islas sent a letter to petitioner at the Lake Charles address which read as follows:

Rather than wait for you to call me next week after you bring your plans back from Louisiana, I have prepared a hand-written list of problems in your three pension plans. This list only addresses items which are in the plan; there are many other provisions which are completely missing.

To assist you in drafting correct amendments, I am also enclosing a set of the worksheets which we use in reviewing a plan. Every item has to be answered in the affirmative unless it can be shown that the provision is not applicable. (There are a very few permissible "No's".)

I will look for the proposed amendments to be here in my office no later than November 3, 1982.

The documents I requested in our conversation yesterday should be sent to me sometime next week.

Additionally, because your applications were filed on forms which have been revised, I am enclosing a questionnaire which is to be completed and returned to me.

Please feel free to phone me.

This letter was never returned to Ms. Islas.

Having received no response from petitioner by November 8, 1982, Ms. Islas prepared a letter stating petitioner had 10 days to provide the requested amendments and information. The letter indicated that if the requested material was not received within that time, petitioner's applications would be processed based on the information presently in the IRS's file which could result in a determination that the plans would not qualify for favorable tax treatment. This letter was signed by the District Director, dated November 8, 1982, and sent to petitioner at the Lake Charles address. Likewise, this letter was never returned to the District Director. In January, and then again in June of 1983, Ms. Islas attempted to contact Mr. McManus in Texas but was told that he was no longer employed there. After speaking with several different people, Ms. Islas was referred to a woman, Mary Hollis, who said her office was still sending mail to Mr. McManus at the Lake Charles address and that it was not being returned.

Three proposed adverse determination letters were sent by certified mail to petitioner at the Lake Charles address on September 23, 1983. Each letter contained the paragraph:

If you do not agree, you can appeal within 30 days from the date of this letter through this Key District Office. To file your appeal, please follow the instructions in the enclosed Notice 402 under the heading Regional Office Appeal. If we have not received an appeal within 30 days, we will issue a final adverse determination letter.

Attached to each letter was a detailed determination explanation outlining the plan provisions which violated specific sections of the Code. All three were returned to the District Director on October 4, 1983, marked "UNDELIVERABLE AS ADDRESSED/UNABLE TO FORWARD."

Mr. McManus sold his Lake Charles house on October 25, 1983. At some time subsequent to September 23, 1983, but prior to June 7, 1984, Mr. McManus gave the Louisiana post office a forwarding address for petitioner in Easton, Maryland.

On June 7, 1984, the District Director sent three final adverse determination letters to petitioner at the Lake

Charles address by certified mail. These letters read as follows:

This is a final adverse determination letter indicating that this plan does not meet the requirements of Section 401 of the Internal Revenue Code for the plan year ending December 31, 1981, and subsequent years. The explanation of our determination is reflected in the enclosed administrative decision.

Since we have no record of receiving a written appeal for Regional and National Office consideration, we believe that you did not exhaust available administrative remedies. As indicated in Notice 402 previously sent to you, Internal Revenue Code Section 7476(b)(3) provides, in part, that "The Tax Court shall not issue a declaratory judgment or decree under this section in any proceeding unless it determines that the petitioner has exhausted administrative remedies available to him within the Internal Revenue Service." However, if you believe you have exhausted your administrative remedies and want a declaratory judgment, your petition must be filed before 92 days after the date this letter was mailed to you.

If you have any questions, please contact the person whose name and telephone number are shown above.

Detailed determination explanations accompanied each letter. These letters were not returned to the District Director. At no time prior to June 7, 1984, or on any date thereafter, did Mr. McManus give either Ms. Islas or the District Director notice that petitioner's address was other than the Lake Charles address.

Mr. McManus timely mailed and thus timely filed a petition in this Court on September 7, 1984, on petitioner's behalf, requesting declaratory judgment pursuant to section 7476 with respect to the initial qualification of the three retirement plans as "adopted on 19 January 1981 and amended on 18 December 1981." The petition alleges the IRS erred by not allowing petitioner the opportunity to correct drafting errors, to amend "nitpicking objections," and to adopt other amendments in conformance with the requirements of sections 401, 410, 411, and the regulations thereunder. Petitioner argues that the plans as amended on an unspecified date in the past and as intended to be

amended on an unspecified date in the future are entitled to favorable determinations.

Additionally, Mr. McManus admits to receiving from the IRS only the acknowledgment of the applications, two phone calls from Ms. Islas and the final adverse determination letters.

## OPINION

Section 7476 creates a judicial remedy for taxpayers seeking determinations of qualification of retirement plans under section 401(a), which latter section lists the characteristics required of retirement plans to receive favorable tax treatment under the Code. Upon the filing of an appropriate pleading, the Tax Court may make a declaratory judgment on the initial or continuing qualification of such plans. Sec. 7476(a). There are two limitations on this Court's authority which are relevant to the present case. They are contained in section 7476(b):]

(3) *Exhaustion of administrative remedies.*—The Tax Court shall not issue a declaratory judgment or decree under this section in any proceeding unless it determines that the petitioner has exhausted administrative remedies available to him within the Internal Revenue Service. A petitioner shall not be deemed to have exhausted his administrative remedies with respect to a failure by the Secretary to make a determination with respect to initial qualification or continuing qualification of a retirement plan before the expiration of 270 days after the request for such determination was made.

(4) *Plan put into effect.*—No proceeding may be maintained under this section unless the plan (and, in the case of a controversy involving the continuing qualification of the plan because of an amendment to the plan, the amendment) with respect to which a decision of the Tax Court is sought has been put into effect before the filing of the pleading. * * *

Congress explained these requirements in S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.) 80, 193:

*Exhaustion of administrative remedies required.*—For a petitioner to receive a declaratory judgment from the Tax Court under this provision, he must demonstrate to the court that he has exhausted *all* administrative remedies which are available to him within the Internal Revenue Service. Thus, in the case of an employer (or a plan trustee) he must demonstrate that he has made a request to the Internal Revenue Service for a determination and that the Internal Revenue Service has either failed to act, or has acted adversely to him, and that he has appealed any

adverse determination by a district office to the national office of the Internal Revenue Service, or has requested or obtained through the district director technical advice of the national office. To exhaust his administrative remedies a party must satisfy *all* procedural requirements of the Service. For example, the Service may decline to make a determination if an employer fails to supply the Service with the necessary information on which to make a determination. * * *

In addition to exhausting administrative remedies, an employer must have placed a plan into effect prior to the petition of the Tax Court for a declaratory judgment. * * * [Emphasis added.]

Procedures for obtaining determination letters for qualification of retirement plans appear in section 601.201(o) of the Statement of Procedural Rules (Procedural Rules), 26 C.F.R. Part 601 (1983). The actions necessary for applicants to complete in order to be deemed to have exhausted the available administrative remedies within the meaning of section 7476(b)(3) are contained in section 601.201(o)(10) of the Procedural Rules. These are: (1) Filing a completed application with the appropriate district director, (2) complying with certain notice requirements, and (3) making an appeal to the Appeals Office in the event of a notice of proposed adverse determination from the district director. Sec. 601.201(o)(10)(i) of the Procedural Rules. Instructions for requesting appeals office consideration are contained in section 601.201(o)(6) of the Procedural Rules, as well as the statement that a failure by the applicant to follow these steps will constitute a failure to exhaust administrative remedies as required by section 7476(b)(3) and preclude the applicant from seeking declaratory judgment thereunder.

The exhaustion requirement has been the subject both of cases involving section 7476 and its counterpart in the area of exempt organizations, section 7428. Failure to satisfy this jurisdictional limitation results in dismissal of the declaratory judgment action. *Efco Tool Co. v. Commissioner,* 81 T.C. 976, 978 (1983). See *Gladstone Foundation v. Commissioner,* 77 T.C. 221 (1981); *BBS Associates, Inc. v. Commissioner,* 74 T.C. 1118 (1980), affd. without published opinion 661 F.2d 913 (3d Cir. 1981); *B.H.W. Anesthesia Foundation v. Commissioner,* 72 T.C. 681 (1979); *Prince Corp. v. Commissioner,* 67 T.C. 318 (1976).

We have not yet considered the exhaustion requirement in an initial qualification case in which the IRS has made a

final adverse determination. The issue has arisen most frequently in conjunction with the second sentence of section 7476(b)(3) which states that a petitioner will not be deemed to have exhausted administrative remedies where the IRS has failed to make a determination with respect to initial or continuing qualification of a retirement plan before the expiration of 270 days after the request for a determination was made.

The petitioner in *Prince Corp.* was unsuccessful in arguing that it automatically met the exhaustion requirement upon the expiration of 270 days. The Court held that the mere lapse of 270 days is not a per se test of the exhaustion requirement under section 7476(b)(3). Rather, after that time, "a petitioner need only demonstrate that progress is severely hampered due to causes beyond its control." *Prince Corp. v. Commissioner, supra* at 328. This Court examined the record in *BBS Associates* to find that "[p]etitioner diligently pressed its application for 21 months before filing this action" under section 7476. *BBS Associates, Inc. v. Commissioner, supra* at 1121. In *B.H.W. Anesthesia Foundation,* this Court held that it had jurisdiction under section 7428 after determining that "Petitioner had completed the normal progression through administrative channels." *B.H.W. Anesthesia Foundation v. Commissioner, supra* at 682 n. 2. Thus, even where the IRS has failed to make a determination within 270 days, petitioner must establish that it took all the applicable procedural steps before this Court will find the exhaustion requirement satisfied.

The issue in the present case is whether petitioner has sufficiently availed itself of the procedural opportunities during the administrative process which culminated in the issuance of final adverse determinations. In *Efco Tool Co.,* we found the purpose of the jurisdictional limitation of section 7476(b)(3) satisfied in a revocation case once the IRS had issued a final revocation letter. We considered there the need for the IRS to have sufficient information upon which to base its determination as well as the need to prevent interruption of the administrative process. We decided these purposes were satisfied where a final revocation letter had been issued. *Efco Tool Co. v. Commissioner, supra* at 981.

Although the same need exists in an initial qualification case, the administrative process in a revocation situation differs because the latter is initiated by the IRS. This Court will examine closely the IRS's actions when respondent raises the exhaustion requirement as a bar to jurisdiction in a revocation case where the administrative record is derived largely from the IRS's own investigation of the facts. Issuance of a final revocation letter is evidence that the administrative record was sufficiently complete for the IRS to make a determination. The holding of *Efco Tool Co.*, however, does not mean that issuance of a final adverse determination letter in an initial qualification case obviates the need for petitioner to demonstrate that it exhausted its remedies any more than does the passage of 270 days where the IRS has failed to make a determination.

Based on the information submitted by petitioner, which was clearly insufficient to warrant a favorable determination of its plans, the IRS issued final adverse determination letters. The fact that such determinations were issued, however, is not a per se test of exhaustion in an initial qualification case. Where petitioner initiates the administrative process and then seeks to invoke the jurisdiction of this Court to redetermine whether its retirement plans qualify, petitioner must demonstrate that it availed itself of every procedural opportunity in pursuit of favorable determinations. We must therefore examine closely what actions were taken on petitioner's behalf.

Subsequent to submitting the applications for initial qualification, Mr. McManus, on petitioner's behalf, did absolutely nothing to further participate in the administrative determination proceeding. He moved from Louisiana to Texas after filing the applications without notifying the IRS of a change in petitioner's address or telephone number; and moved again to Maryland after the conversations with Ms. Islas. From those conversations Mr. McManus was aware that the retirement plans as submitted were defective yet he made no attempt to amend them. Petitioner did not avail itself of the right to file an appeal with the key district office. Its failure to receive the proposed adverse determination letters advising of the appeals process was precipitated

by Mr. McManus' failure to notify the IRS of petitioner's current address as of September 23, 1983.

The record shows without equivocation, and despite petitioner's protestations to the contrary, that petitioner received all of the written correspondence from the IRS except the three proposed adverse determination letters. The IRS properly mailed all correspondence to petitioner's address as it appeared on the applications for determination. That is all that is required of the IRS under section 1.7476-3(b), Income Tax Regs. Furthermore, Ms. Islas' affidavit indicates she made every attempt to notify Mr. McManus of the impending proposed adverse determination letters before their issuance to petitioner.

Failure to appeal a proposed adverse determination was held to be a failure to exhaust administrative remedies under section 7428(b)(2) in *Change-All Souls Housing Corp. v. United States,* 229 Ct.Cl. 380, 671 F.2d 463 (1982). The Court of Claims reasoned that the arguments presented to the court might have persuaded the IRS to change its view had the interested party filed a protest. We agree with the reasoning in *Change-All Souls* in that the purpose of the exhaustion requirement is best served if a petitioner is required to fully exploit the administrative process before seeking relief in this Court.

The petition avers that the objectionable provisions have been amended. We have before us only the original plans as executed and amended in 1981. The IRS had before it only the original plans as executed and amended in 1981. The administrative record as stipulated by petitioner contains only the original plans as executed and amended in 1981. In its petition, petitioner asks us to make a declaration with respect to plans it never submitted to the IRS. This Court's function in a declaratory judgment proceeding is to review the reasons provided by the IRS in its notice to the party requesting qualification, and thereupon make a redetermination of the IRS's determination, not a general examination of the provisions of the plan. H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 343. Petitioner would have us go outside the scope of the IRS's determinations to review plans that are not contained in the administrative record. This we

cannot do. *Houston Lawyer Referral Serv. v. Commissioner,* 69 T.C. 570 (1978).

The administrative process as promulgated in section 601.201(o) of the Procedural Rules is designed to afford applicants every opportunity to present their arguments and amend their plans. At no time during the administrative determination proceeding did Mr. McManus attempt to present arguments or submit amended plans. On this record, petitioner has failed the exhaustion requirement of section 7476(b)(3) and we so hold.

Furthermore, the petition indicates that some of the corrective amendments to the retirement plans have not yet been made. No proceeding may be maintained under section 7476 unless the plan with respect to which a decision of the Tax Court is sought has been put into effect prior to filing of the pleading. Sec. 7476(b)(4). In *Arthur Sack, Pension Paperwork, Inc. v. Commissioner,* 82 T.C. 741 (1984), this Court dismissed an action for lack of jurisdiction because the administrative record and petitioner's briefs demonstrated that petitioner sought a favorable declaratory judgment with respect to the plan as it would exist if the proposed amendments were adopted. We agree with the holding in *Arthur Sack* and note that our decision here does not preclude petitioner from submitting new applications to the IRS for determinations of the qualification of its amended plans.

In closing and consistent with Mr. McManus' refusal to act on behalf of petitioner, he requested an extension of time for the filing of its brief, yet no brief was filed.

Respondent's motion to dismiss for lack of jurisdiction will be granted.

*An order of dismissal for lack of jurisdiction will be entered.*