HALLIBURTON COMPANY, PETITIONER
*v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

HALLIBURTON COMPANY, BY KEN NASH,
PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE,
RESPONDENT

Docket Nos. 26290-90R, 2397-91R.    Filed February 4, 1992.

*Donald F. Wood* and *Douglas E. Hamel,* for petitioner in docket No. 26290-90R.

Ken Nash, pro se, in docket No. 2397-91R.

*James W. Lessis, Janine Bosley,* and *Patricia Scott-Clayton,* for respondent.

OPINION

WELLS, *Judge:* The instant case is before us on respondent's motion to dismiss the petitions for declaratory relief for lack of jurisdiction on grounds that petitioners Halliburton Co. (Halliburton) and Ken Nash (Mr. Nash)[1] have failed to exhaust their administrative remedies, as required by section 7476(b)(3).[2] Halliburton and Mr. Nash argue that they have complied with all of respondent's requirements regarding administrative review of their requests for determination, thus exhausting such remedies, and that we thus have jurisdiction to hear the merits of their petitions for declaratory judgment with respect to the qualification of certain pension plans sponsored by Halliburton.

The petitions for declaratory judgment arise from Halliburton's efforts to secure a determination from respondent as to whether a pension plan sponsored by Halliburton experienced a partial termination in 1986 as a result of a significant reduction in Halliburton's work force during such year. Broadly

---

[1] For convenience, petitioners herein will be referred to by name, while the term "a petitioner" will refer to a person entitled to petition this Court for declaratory relief under sec. 7476(b)(1).

[2] Except as otherwise noted, all section references are to the Internal Revenue Code as applicable to the instant case, and all Rule references are to the Tax Court Rules of Practice and Procedure.

speaking, the effect of a determination that no partial termination occurred would be to allocate forfeitures by nonvested participants who were terminated in such year among employees continuing to participate in the plans, while a determination that a partial termination did occur would restore such forfeitures to the terminated participants.[3] Sec. 411(d)(3).

Halliburton maintains that no partial termination occurred, while Mr. Nash, a former employee laid off by Halliburton in 1986, argues that a partial termination did take place in such year. Both Halliburton and Mr. Nash have asked this Court for a declaratory judgment under section 7476 on such issue due to respondent's failure to issue a final determination on whether a partial termination occurred. Respondent argues that both petitions are premature, contending that neither Halliburton nor Mr. Nash has satisfied the exhaustion requirement of section 7476(b)(3). For the reasons set out below, we hold that Halliburton and Mr. Nash have both exhausted their respective administrative remedies and therefore this Court has jurisdiction over both petitions.

*Petitioner Halliburton*

## Background

A lengthy administrative proceeding preceded the filing of the petitions in the instant case. On April 27, 1987, Halliburton submitted applications for determination to respondent's Dallas, Texas, Key District requesting determinations with respect to two pension plans sponsored by Halliburton, the Halliburton Profit Sharing and Savings Plan (the Halliburton plan) and the IMCO Services Profit Sharing and Savings Plan (the IMCO plan). The Halliburton plan and the IMCO plan are sometimes referred to collectively as the plans. Halliburton requested a determination from respondent that the Halliburton plan continued to qualify[4] under section 401(a) and that a partial termination of the Halliburton plan did not occur in 1986. In 1986, Halliburton established the IMCO plan as a

---

[3]At the time Halliburton filed its petition, the amount of forfeitures to be allocated equaled approximately $71 million.

[4]The Halliburton plan had been established in 1944, and the value of such plan's assets exceeded $1 billion at the time Halliburton's petition was filed.

spinoff from the Halliburton plan, and Halliburton requested that respondent make a determination of whether the IMCO plan initially qualified. By letter dated May 13, 1987, Halliburton requested expedited handling of both requests for determination. By letter dated June 16, 1987, respondent denied such requests, but agreed to process the requests on the same priority as applications for determinations relating to plan terminations.

Some 6 months later, on November 13, 1987, respondent's agent requested additional information concerning the plans. Halliburton's counsel furnished such information on December 7, 1987. Several telephone conferences ensued, after which Halliburton supplemented its response on January 8, 1988. Shortly thereafter, in January or February 1988, the Dallas Key District orally informed Halliburton's counsel that respondent would propose a determination that a partial termination of the Halliburton plan occurred during 1986. In response, on March 24, 1988, Halliburton's counsel provided a memorandum of authorities arguing that no partial termination occurred. Several telephone conferences concerning the issue also were held during such time.

On September 7, 1988, the Dallas Key District issued proposed adverse determination letters to Halliburton with respect to the plans. The proposed letters concluded that the plans failed to qualify under section 401(a) for plan years ending December 31, 1986, and all subsequent years because the Halliburton plan experienced a partial termination during 1986. Respondent reasoned that the IMCO plan failed to qualify because of the partial termination that disqualified the Halliburton plan. Respondent's proposed letters were accompanied by a supporting memorandum consisting of over 30 pages. The proposed letters stated that an appeal of the proposed adverse plan determinations was necessary in order for Halliburton to exhaust its administrative remedies, as required under section 7476(b)(3), prior to commencing a declaratory judgment action concerning the partial termination issue.

After receiving an extension of the time allowed for filing an appeal, Halliburton submitted, on October 13, 1988, an appeal of the proposed adverse plan determinations. Halliburton's appeals initially were submitted to the Dallas Regional Appeals Office, where no action was taken on them for 7

months. In early May 1989, the appeals were transferred to the Houston Regional Appeals Office. Halliburton promptly contacted such office and requested that a conference be held at the earliest possible date. The appeals conference was held on July 27, 1989, and, in the latter part of August 1989, the appeals officer orally informed Halliburton's counsel that he intended to issue a final adverse determination letter on the partial termination issue, but that the file would be returned to the Dallas Appeals Office for processing. During autumn 1989, Halliburton's counsel made numerous inquiries regarding the status of the appeal.

Halliburton also retained new counsel to assist in the matter. On December 21, 1989, Halliburton's counsel asked respondent not to take any action until January 15, 1990, while Halliburton reconsidered its position. On January 16, 1990, Halliburton's counsel requested that the Dallas Appeals Office consider additional information bearing on the partial termination issue, and the Appeals Office agreed to do so. On February 2, 1990, Halliburton filed a supplemental submission consisting of approximately 350 pages updating and refining the original submission. Additional information was submitted on February 12, 1990. At the request of Halliburton, a second appeals conference was held with the Houston Appeals Office on February 28, 1990. By letter dated June 14, 1990, Halliburton advised respondent that Halliburton intended to request, pursuant to section 7805(b), that the retroactive effect of any adverse determinations issued by respondent with respect to the plans be limited.

On July 31, 1990, the Houston Appeals Office informed Halliburton that it intended to issue final adverse determination letters and provided a supplemental supporting memorandum outlining the reasons for such action. Subsequently, on August 23, 1990, Halliburton formally requested that, in the event it was determined that a partial termination of the Halliburton plan occurred, respondent limit the retroactive effect of such determination pursuant to section 7805(b). Halliburton requested that any disqualification arising out of the plan determinations take effect no earlier than August 23, 1990. Respondent's procedures required that the application for limitation of the retroactive effect of the plan determinations be made in the form of a request for technical advice

from respondent's National Office, as only the National Office could act on such applications. Rev. Proc. 90-4, 1990-1 C.B. 410, 421; Order No. 96 (Rev. 10), Manual Handbook 1229; 5 Administration, Internal Revenue Manual (CCH), sec. 8(16)28-(3) and (4), at 26,301-6; 1 Administration, Internal Revenue Manual (CCH) sec. 654(1)(c), at 1942.

On September 19, 1990, Halliburton called to the Houston Appeals Office's attention a recent case[5] which supported Halliburton's position and requested that the Houston Appeals Office reconsider its position in light of such case. The Houston Appeals Office, however, declined to change its position.

On November 21, 1990, over 280 days since it had last filed any information regarding such issue, 24 months after it had filed its appeal, and over 42 months since it had filed the requests for determination, Halliburton filed a petition for declaratory judgment on the issue of whether a partial termination of the Halliburton plan occurred in 1986. At the time the petition was filed, Halliburton's principal place of business was Dallas, Texas. When the petition was filed, the Dallas Appeals Office was preparing for submission to the National Office a request for technical advice with respect to the section 7805(b) issue.

On March 14, 1991, respondent filed a motion to dismiss the petition on grounds that Halliburton had failed to exhaust its administrative remedies, a prerequisite to maintaining a declaratory judgment action. Sec. 7476(b)(3). On May 8, 1991, at a hearing on respondent's motion, respondent conceded that Halliburton had exhausted its administrative remedies except with respect to the section 7805(b) request.

## Discussion

Respondent contends that Halliburton's petition for a declaratory judgment with respect to the qualification of the plans is premature because Halliburton failed to exhaust its administrative remedies, as required by section 7476(b)(3),

---

[5]The case relied upon by petitioner Halliburton was *Weil v. Retirement Plan Administrative Committee,* 913 F.2d 1045 (2d Cir. 1990); however, on a motion for rehearing, the Second Circuit subsequently vacated the holding which supported Halliburton's position. 933 F.2d 106 (2d Cir. 1991).

prior to instituting the instant case.  Respondent argues that the administrative process was ongoing at the time Halliburton's petition was filed, as the Appeals Office was preparing the request for technical advice with respect to the section 7805(b) issue for submission to the National Office, and that he had not been afforded a "reasonable time" to act upon such request prior to the filing of the petition, as required by section 601.201(o)(10)(i)(c) and (iv), Statement of Procedural Rules. Respondent further submits that he was continuing to work with Halliburton within the administrative process to evaluate the information submitted in light of the requirements for qualified plan status.

Halliburton bears the burden of proving that the jurisdictional requirements of section 7476 have been met.  Rule 217(c)(1)(A)(i); *BBS Associates, Inc. v. Commissioner,* 74 T.C. 1118, 1120-1121 (1980), affd. without published opinion 661 F.2d 913 (3d Cir. 1981).  The exhaustion requirement is a prerequisite to our jurisdiction and failure to satisfy it results in dismissal of the action. *McManus v. Commissioner,* 93 T.C. 79, 84 (1989).  The legislative history of section 7476 admonishes that a petitioner "must satisfy all procedural requirements within the Service" before it will be deemed to have cleared such hurdle.  S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.) 80, 193; H. Rept. 93-807, 1974-3 C.B. (Supp.) 236, 344.

In deciding whether an exhaustion of administrative remedies has occurred, we consider whether a petitioner has "'completed the normal progression through administrative channels.'" *McManus v. Commissioner, supra* at 85 (quoting *B.H.W. Anesthesia Foundation v. Commissioner,* 72 T.C. 681, 682 n.2 (1979)).  We consider the need for respondent to have sufficient information upon which to base his determination as well as the need to prevent interruption of the administrative process. *McManus v. Commissioner, supra* at 85.  We have found that—

Where [a] petitioner initiates the administrative process and then seeks to invoke the jurisdiction of this Court to redetermine whether its retirement plans qualify, [a] petitioner must demonstrate that it availed itself of every procedural opportunity in pursuit of favorable determinations.  * * *

*McManus v. Commissioner, supra* at 86.  "[T]he purpose of the exhaustion requirement is best served if a petitioner is required to fully exploit the administrative process before

seeking [declaratory] relief in this Court." *McManus v. Commissioner*, 93 T.C. at 87.

Respondent has issued rules which specify the steps which an applicant for a determination, such as Halliburton, must take in order to meet the exhaustion requirement. Sec. 601.201(o)(10), Statement of Procedural Rules. Such rules provide as follows:

(10) *Exhaustion of administrative remedies.* For purposes of section 7476(b)(3), a petitioner shall be deemed to have exhausted the administrative remedies available to him in the Internal Revenue Service upon the completion of the steps described in * * * this section, subject, however, to * * * [exceptions not relevant here].

(i) The administrative remedies of an applicant with respect to any matter relating to the qualification of a plan are:

(a) Filing a completed application with the appropriate district director pursuant to * * * [the requirements] of this section;

(b) Compliance with the requirements pertaining to notice to interested parties as set forth in * * * this section; and

(c) An appeal to the Appeals office pursuant to * * * this section, in the event of a notice of proposed adverse determination from the district director.

*    *    *    *    *    *    *

The step described in paragraph (o)(10)(i)(c) of this section will not be considered completed until the Internal Revenue Service has had a reasonable time to act upon the appeal. * * *

Congress, however, provided that the exhaustion requirement is not met until 270 days after the time the request for determination was made. Sec. 7476(b)(3). The 270-day period is not a per se test for exhaustion, after which jurisdiction automatically arises, *Prince Corp. v. Commissioner,* 67 T.C. 318, 326-328 (1976); rather, it affords respondent a minimum period of time to consider the request without judicial interference. *Christian Stewardship Assistance v. Commissioner,* 70 T.C. 1037, 1045 (1978); *Prince Corp. v. Commissioner, supra* at 326. Halliburton has satisfied the 270-day requirement in the instant case.

After such 270-day period has expired, a petitioner seeking declaratory relief need only show that "progress is severely hampered due to causes beyond its control." *Prince Corp. v. Commissioner, supra* at 328. Respondent concedes that Halliburton has complied with the requirements of the rules, but argues that the administrative process had not yet

concluded when Halliburton filed the declaratory judgment petition in the instant case because respondent had not had an adequate opportunity to consider Halliburton's request for section 7805(b) relief. Respondent argues that the section 7805(b) request comprises part of the appeals process and that respondent therefore must be afforded a reasonable amount of time to consider such request before exhaustion can occur under section 601.201(o)(10), Statement of Procedural Rules.

Respondent contends that the delay in issuing final plan determinations is due to Halliburton's request for section 7805(b) relief. Respondent argues that, where a petitioner has initiated administrative processes in addition to those described in the rules, such as by requesting section 7805(b) relief, a petitioner must wait until such processes have had an opportunity to run their course before exhaustion may be deemed to have occurred. Respondent claims that his administrative practice is to defer issuance of a final determination letter until the retroactivity issue is resolved. Respondent argues that, if we should take jurisdiction at the present stage, such action would constitute an unwarranted judicial interference in an ongoing administrative process.

Halliburton, on the other hand, contends that it has exhausted the available administrative remedies and that an adequate administrative record exists upon which we may base a decision. Halliburton accordingly urges us to take jurisdiction and allow the case to proceed. Halliburton argues that compliance with the procedural requirements of the rules is sufficient to satisfy the exhaustion requirement, and that respondent has unduly protracted the administrative proceedings. Halliburton also argues that submission of the request for section 7805(b) relief has no bearing on the question of whether exhaustion with respect to the substantive request has occurred.[6] Halliburton maintains that requesting limitation of the retroactive effect of an adverse final determination is collateral to the partial termination issue and that respondent's determination on the retroactivity question will not

---

[6]In support of its position, Halliburton relies upon an unpublished order of this Court where a similar issue arose in a case otherwise unrelated to the present case. Such order is not published, and we do not consider such unpublished materials as precedent, even if the opposing party has been apprised of them. *Brock v. Commissioner*, 92 T.C. 1127, 1132 (1989). See also *Williams v. Commissioner*, T.C. Memo. 1991-521.

affect the ultimate resolution of whether a partial termination of the Halliburton plan occurred in 1986. Halliburton also contends that the filing of its section 7805(b) request was designed simply to protect its ability to have the Tax Court review the retroactive application of any adverse determination respondent might issue.[7]

After due consideration, we agree with Halliburton that the section 7805(b) request is a collateral matter and that it does not prevent Halliburton from having exhausted its administrative remedies with respect to the partial termination issue.

Respondent contends that his practice is to defer issuance of a final determination letter until a section 7805(b) request with respect to such determination is acted upon and that, accordingly, the administrative process cannot be considered complete until he has had an opportunity to consider such a request. Respondent's rules, however, contain no express requirement that a petitioner must allow respondent to process a request for section 7805(b) relief before exhaustion can occur. We note that, in enacting section 7476, Congress granted the Commissioner fairly wide discretion to specify the conditions for satisfaction of the exhaustion requirement. S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.) 80, 193; H. Rept. 93-807, 1974-3 C.B. (Supp.) 236, 344. Thus, respondent could have amended his rules governing the exhaustion requirement to provide that he be given the opportunity to consider a request for section 7805(b) relief.

Furthermore, the statements of procedure upon which respondent relies to demonstrate that a final determination cannot be issued until such request is acted upon do not expressly provide for such a procedure. Respondent cites Internal Revenue Manual section 8(16)28(4) in support of his position; however, such provision merely directs Appeals Offices to refer requests for relief under section 7805(b) to the National Office and does not provide instructions as to the handling of the substantive request while the National Office

---

[7]Halliburton seems to base its argument upon sec. 18.02 of Rev. Proc. 90-4, 1990-1 C.B. 410, 420-421, superseded by Rev. Proc. 91-4, 1991-1 C.B. 375, which provides that, with respect to a pending ruling request, application for relief may be made when the ruling initially is requested or "at any time before the ruling is issued." Halliburton evidently is concerned that respondent might argue that a sec. 7805(b) request made after the issuance of an adverse determination was untimely and could not be considered by either respondent or this Court.

is considering the section 7805(b) request. 5 Administration, Internal Revenue Manual (CCH), sec. 8(16)28(4), at 26,301-6. We note that respondent is capable of requiring subordinate offices to suspend action upon a matter while the National Office is considering the section 7805(b) request, as other provisions of the Internal Revenue Manual so provide. See 4 Administration, Internal Revenue Manual (CCH), secs. 7(10)-(12)(10).51, at 22,411-173, 7(10)(12)(10).71, at 22,411-174, 7(10)(12)(13).33, at 22,411-183, 7(10)(12)(13).5, at 22,411-185 (detailing procedures where retroactive relief from effect of revocation of exempt status is sought). In other cases, however, it appears that respondent has directed his agents to handle the substantive issue and the section 7805(b) issue separately, providing that the section 7805(b) request be referred to the National Office after the Key District or Appeals Office has reached a conclusion on the substantive issue. 4 Administration, Internal Revenue Manual (CCH), sec. 7(10)(12)(16).3, at 22,411-187 to 22,411-188; 5 Administration, Internal Revenue Manual (CCH), sec. 7(13)2(14), at 23,455-9. The current state of respondent's rules and guidelines show that respondent has no established, consistent policy with regard to the coordination of processing requests for determination on substantive issues and requests for section 7805(b) relief.

In the absence of an express provision with respect to the effect of section 7805(b) requests on the exhaustion issue, we look to see if any other rule of law requires dismissal of the instant case. In *Prince Corp. v. Commissioner,* 67 T.C. 318, 327-328 (1976), we recognized that judicial interruption of an ongoing administrative process would frustrate the requirement that a petitioner fully exhaust its opportunities to resolve the subject of a determination request within the Internal Revenue Service before resorting to this Court for a declaratory judgment.

If the section 7805(b) request is properly considered an integral part of Halliburton's request for a determination with respect to the partial termination issue in the instant case, respondent's argument in the instant case that he should be afforded a reasonable opportunity to consider such request before we find that Halliburton has fully exhausted its administrative remedies would seem to have merit. That is so

because, although filing a section 7805(b) request is discretionary, under ordinary circumstances, logic would allow that the administrative process should have a reasonable chance to function once a petitioner has set it in motion. Furthermore, limiting the retroactive effect of a determination under the authority of section 7805(b) may, in some instances, have the same effect as a favorable determination. Consequently, under appropriate circumstances, in the case of an administrative process that has been extended by the invocation of additional or optional remedies that are *not* collateral to the issue under consideration prior to the invocation of such remedies, exhaustion would seem to occur only after such remedies have had a reasonable opportunity to be considered.

Halliburton cites two cases, *Wyoming Community Development Authority v. Baker,* 801 F.2d 364 (10th Cir. 1986), and *Camenisch v. University of Texas,* 616 F.2d 127 (5th Cir. 1980), vacated 451 U.S. 390 (1981), for the proposition that invoking discretionary procedures is not necessary for exhaustion of administrative remedies. We, however, find the cited cases to be unhelpful because they did not involve plaintiffs who actually availed themselves of discretionary remedies, as Halliburton did in the instant case. Consequently, such cases furnish no guidance on the question of when exhaustion occurs in the case of a petitioner that actually avails itself of a discretionary remedy.

After considering the specific facts and circumstances of the instant case, however, we find that the section 7805(b) request is merely collateral to Halliburton's request for a determination on the partial termination issue and thus does not affect the question of whether an exhaustion with respect to such substantive request has occurred. For the section 7805(b) request to be integral to the request for substantive relief, we think the granting of a petitioner's request for relief under section 7805(b) should have the same effect as a favorable determination on the merits. Respondent argues that granting the section 7805(b) request would render the instant case moot. We do not agree. The determination as to whether a partial termination occurred will govern the allocation of the forfeitures to either the employees laid off in 1986 or to the employees who continued to work for Halliburton subsequently. Consequently, limiting the retroactive effect of a disqualifi-

cation of the plans resulting from a determination that a partial termination occurred in 1986 is not tantamount to a determination that no partial termination occurred in such year. Accordingly, we hold that the section 7805(b) request in the instant case is collateral to the substantive determination requested by Halliburton.

We consider an additional factor in deciding whether to permit the instant case to go forward on its merits. We note that we have considered claims by petitioners in other declaratory judgment actions with respect to the exercise of respondent's discretion under section 7805(b). *Martin Fireproofing Profit-Sharing Plan & Trust v. Commissioner,* 92 T.C. 1173, 1183 (1989); *Virginia Education Fund v. Commissioner,* 85 T.C. 743, 752-754 (1985), affd. 799 F.2d 903 (4th Cir. 1986); *Oakton Distributors, Inc. v. Commissioner,* 73 T.C. 182, 192 (1979); *Christian Stewardship Assistance v. Commissioner,* 70 T.C. 1037, 1044-1045 (1978). After the issue of partial termination is resolved, it is conceivable that Halliburton might come to this Court again with a claim that respondent abused his discretion with respect to granting relief under section 7805(b), and that we would be obliged to consider such claim in a new proceeding. Consequently, considerations of judicial economy might suggest that it would be better to wait until all of Halliburton's claims could be heard in one proceeding. There are, however, factors in the instant case which militate in favor of proceeding to hear the partial termination issue. We note that Halliburton's request for a determination has been outstanding for 4½ years. We also note the considerable number of plan participants that will be affected by the resolution of the partial termination issue. At the time Halliburton filed its petition, the amount of forfeitures, together with the earnings thereon, in issue approximated $71 million. Such forfeitures will be allocated either to the accounts of over 11,000 employees who continued to participate in the plan in 1987, or to over 3,500 employees terminated in 1986 with account balances not fully vested. During the time the partial termination issue has been under consideration, participants and former participants have married, divorced, become incapacitated, retired, otherwise terminated their employment, or died. As time passes, plan administration becomes increasingly difficult and individual participants'

legal affairs, such as probate and divorce proceedings, as well as retirement planning, are complicated because the forfeitures cannot be allocated. Consequently, we find the factors supporting prompt consideration of the partial termination issue outweigh the countervailing consideration of economy.

*Petitioner Ken Nash*

### Background

On January 30, 1991, Mr. Nash, a former employee of Halliburton who had been laid off in 1986, filed a petition for a declaratory judgment that a partial termination of the Halliburton plan had occurred in 1986. At the time he filed his petition, Mr. Nash resided in Houston, Texas. Mr. Nash forfeited his nonvested pension benefits under the Halliburton plan as a result of his termination. Prior to filing his petition in the instant case, Mr. Nash submitted a comment letter to respondent's Dallas, Texas, Key District on June 4, 1987, within 45 days of the April 28, 1987, date on which such office received Halliburton's request for a determination with respect to the plans. Respondent contends that Mr. Nash instituted his suit prematurely and that he must wait until the outstanding issues affecting Halliburton are resolved. For the reasons discussed below, however, we find that Mr. Nash may maintain the instant case he has instituted for declaratory judgment.

### Discussion

An interested party[8] who seeks declaratory relief under section 7476 must exhaust the administrative remedies afforded by the Commissioner before he may maintain an action. Sec. 7476(b)(3). The legislative history of such section states that an interested party must "satisfy all procedural requirements of the Service" in order to exhaust his administrative remedies. S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.)

---

[8]Congress has authorized the Secretary of the Treasury to prescribe regulations governing the question of who qualifies as an interested party for purposes of sec. 7476. Sec. 7476(b)(1). The regulations provide that, in the case of an action with respect to a plan termination, the term "interested parties" includes former employees with vested benefits under the plan in question. Sec. 1.7476-1(b)(5), Income Tax Regs.

80, 193. The Commissioner has issued rules which provide, in relevant part, that, in order to exhaust administrative remedies, an interested party must submit a comment letter to the district director considering the application for determination by the 45th day after the date the district director receives such application. Sec. 601.201(o)(10)(ii), Statement of Procedural Rules. Respondent concedes that Mr. Nash has satisfied the express requirements of the rules.

Nevertheless, respondent has moved to dismiss Mr. Nash's petition, asserting that the Court does not have jurisdiction to hear Mr. Nash's case until it has jurisdiction to hear Halliburton's case.[9] We disagree. First of all, we note that Congress, in crafting section 7476, permitted both employers and interested parties, such as employees, to file petitions for declaratory judgment relief. One of Congress' primary purposes in enacting section 7476 was to permit employees to participate in the administrative and judicial processes concerning the qualification of retirement plans in which they are participants. *Federal Land Bank Association v. Commissioner,* 67 T.C. 29, 34-36 (1976), revd. on other grounds 573 F.2d 179 (4th Cir. 1978). We previously have held that "the right of employees and * * * [other interested parties] to participate is an essential part of section 7476." *Id.* at 36.

The plain language of the statute demonstrates that the rights of employers and employees are separate and that the right of an employee to file a petition does not depend upon the situation of the employer. Sec. 7476(b)(1); S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.) at 194-195. Consistent with the clear intent of Congress that the right of interested parties to petition this Court be independent of the plan sponsor's, respondent's own rules do not contain any requirement that the ability of the employer to file a petition for declaratory judgment controls whether an interested party may file a

---

[9]Respondent also argued at the hearing on the motion to dismiss that Mr. Nash was required to wait until the final determination letters had been issued to Halliburton before he could file a petition seeking declaratory judgment. Respondent cited no authority for the proposition, and no provision of the statute, regulations, or rules contains such a requirement. In fact, Rule 211(c)(4)(E) clearly contemplates that an interested party may file a petition seeking declaratory judgment action prior to the issuance of a notice of determination. Respondent has abandoned such argument in his post-hearing memorandum, and we treat the argument as conceded.

petition for declaratory judgment. Mr. Nash's right to file a petition depends upon the facts and circumstances of his own situation, not Halliburton's.

Respondent also contends that Mr. Nash cannot be considered to have exhausted his administrative remedies prior to the time Halliburton has exhausted the remedies available to it under the rules. Respondent cites section 601.201(o)(10)(iv), Statement of Procedural Rules,[10] in support of his position, but his reliance is misplaced. Respondent seems to claim that such provision requires interested parties to wait until the administrative remedies applicable to plan sponsors are exhausted before any interested party will be considered to have exhausted his administrative remedies. The plain meaning of the cited provision, however, is that an interested party shall not be deemed to have exhausted his administrative remedies prior to the time he satisfies the requirements for exhaustion applicable to *him,* and the rules do not condition an interested party's right to file a petition on what the plan sponsor has or has not done.

Respondent is concerned that allowing interested parties to file petitions for declaratory judgment without regard to whether the plan sponsor has exhausted its administrative remedies will cause this Court to make rulings based on an incomplete or undeveloped administrative record. We do not find, however, that such a risk is present in the instant case, as the partial termination issues have been the subject of extensive study by respondent and petitioners. Enormous amounts of information have been submitted to respondent, and a voluminous administrative record has been developed over the 4 years that the issues have been under consideration. Consequently, the administrative record in the instant case is anything but undeveloped.

---

[10]Sec. 601.201(o)(10)(iv), Statement of Procedural Rules, provides, in pertinent part:

(iv) An applicant, or an interested party, or the Pension Benefit Guaranty Corporation shall in no event be deemed to have exhausted his (its) administrative remedies prior to the earlier of—

(a) The completion of all the steps described in paragraph (o)(11)(i), (ii), or (iii) of this section, *whichever is applicable,* subject, however, to paragraph (o)(11)(v), or

(b) The expiration of the 270 day period described in section 7476(b)(3), in a case where the completion of the steps referred to in paragraph (o)(10)(iv)(a) of this section shall not have occurred before the expiration of such 270 day period because of the failure of the Internal Revenue Service to proceed with due diligence.

[Emphasis added.]

Moreover, we believe that respondent's fears are overstated as a general matter. In seeking a declaratory judgment, a petitioner may only raise matters presented to the Commissioner in the administrative process preceding the action. Our decision is to be based on a redetermination of the Commissioner's determination, that is, we must decide whether the Commissioner properly applied the law to the facts presented to him in the request for determination. Rule 217(a); *Sutherland v. Commissioner,* 78 T.C. 395, 405 (1982); *Thompson v. Commissioner,* 71 T.C. 32, 36-37 (1978); H. Rept. 93-807, 1974-3 C.B. (Supp.) 236, 343. Matters not previously presented to the Commissioner may not be raised in a proceeding by an interested party, as the Commissioner has not had an opportunity to act on them, and thus no administrative action exists for this Court to review. *Thompson v. Commissioner, supra* at 37. See also *Hawes v. Commissioner,* 73 T.C. 916, 921 (1980). Consequently, a petition for declaratory judgment by an interested party generally would not require us to make a decision on the basis of an undeveloped administrative record, as our review would be limited to matters which have been raised with the Commissioner by the interested party and on which the Commissioner has had an opportunity to act.

Even if the administrative record on matters with respect to which an interested party has exhausted his administrative remedies is undeveloped, we do not believe that this Court would be obliged to render a decision upon an inadequate record. We are not obliged to take up a case which is not yet ripe for adjudication. *Harwood v. Commissioner,* 83 T.C. 692, 695 (1984). We previously have held that the exercise of jurisdiction under section 7476 is, to some extent, discretionary, *Shut Out Dee-Fence, Inc. v. Commissioner,* 77 T.C. 1197, 1202 (1981), and that, where the Commissioner has not had an opportunity to consider information relevant to the interested party's comment, we will afford the administrative process an appropriate opportunity to function before proceeding with a declaratory judgment action. *Hawes v. Commissioner, supra* at 921. Consequently, should the scenario posited by respondent arise, we are equipped to fashion a solution which balances and adequately protects the interests of the various parties involved in the litigation.

Respondent also argues that no actual controversy exists

between himself and Mr. Nash, as required by section 7476(a), as both of them take the position that a partial termination of the Halliburton plan occurred in 1986. We note that an actual controversy under section 7476 generally arises from some disagreement between a petitioner and the Commissioner as to the qualified status of a plan. *Loftus v. Commissioner,* 90 T.C. 845, 855-859 (1988), affd. without published opinion 872 F.2d 1021 (2d Cir. 1989). Respondent, however, has failed to consider that Mr. Nash is seeking to have the partial termination issue definitely resolved and that Mr. Nash's case is bottomed on respondent's failure to make a final determination in the more than 4 years since Halliburton filed its requests for determination. If respondent determines that a partial termination of the Halliburton plan occurred in 1986, Mr. Nash will be entitled to receive the benefits he forfeited when he was laid off; however, until respondent makes such a determination, Mr. Nash has no right to the forfeitures. Respondent's failure to make a determination has delayed resolution of the question of what benefits Mr. Nash is to receive from the Halliburton plan. Such delay is detrimental to Mr. Nash's interests. We accordingly find that a sufficient controversy exists between Mr. Nash and respondent to satisfy section 7476.

Accordingly, respondent's motions to dismiss will be denied.

To reflect the foregoing,

*Appropriate orders will be issued.*